STARK COUNTY BAR ASSOCIATION ET AL. *v.* MAROSAN.

[Cite as *Stark Cty. Bar Assn. v. Marosan,*
106 Ohio St.3d 430, 2005-Ohio-5412.]

(No. 2005–0818—Submitted June 15, 2005—Decided October 26, 2005.)

**Per Curiam.**

{¶ 1} Respondent, Joseph Eugene Marosan, of Middleburg Heights, Ohio, Attorney Registration No. 0025849, was admitted to the Ohio bar in 1984.

{¶ 2} On August 9, 2004, relator Stark County Bar Association filed a complaint charging respondent with several counts of professional misconduct. On November 29, 2004, relator Cuyahoga County Bar Association filed an amended complaint charging respondent with four other counts of professional misconduct. Respondent answered. A panel of the Board of Commissioners on Grievances and Discipline held a hearing and made findings of fact and conclusions of law, which the board adopted. The panel also recommended a sanction for the misconduct, which the board modified.

## Misconduct

### I. The Stark County Complaint

#### Count One

{¶ 3} Priscilla McGuire paid respondent a $400 retainer in April 2003 to represent her in the dissolution of her marriage. Respondent never filed any documents in court on McGuire's behalf and did not refund the fee to her. During the investigation of his misconduct, respondent could not locate any documents relating to his representation of McGuire.

{¶ 4} Respondent admitted and the board found that he had thereby violated DR 6–101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter). The board also found that respondent had violated DR 1–102(A)(6) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law), 7–101(A)(1) (requiring an attorney to seek the client's lawful objective through reasonable and lawful means), 7–101(A)(2) (requiring an attorney to carry out a contract of professional employment), 7–101(A)(3) (barring conduct that prejudices or damages a client), 9–102(B)(3) (requiring a lawyer to maintain complete records and appropriate accounts), and 9–102(B)(4) (requiring prompt payment of the client's funds or other property in the lawyer's possession).

#### Count Two

{¶ 5} William and Crystal Miller paid respondent a $625 retainer in August 2002 to initiate and pursue a Chapter 7 bankruptcy case on their behalf. In early 2003, the Millers told another lawyer that they no longer wanted to file bankrupt-

cy, and that lawyer promptly called and wrote respondent advising him of the Millers' wishes. Even so, respondent filed the bankruptcy petition on the Millers' behalf in December 2003. The Millers were unaware that respondent had filed the bankruptcy petition until they tried to refinance the mortgage on their home in early 2004 and were told by the lender that they could not refinance the mortgage because they had filed bankruptcy. The Millers then retained another attorney, who filed a motion to dismiss the bankruptcy case in February 2004. The bankruptcy court dismissed the case the following month. Respondent did not refund any of the fee that he had received from the Millers.

{¶ 6} The board found that respondent had thereby violated DR 1–102(A)(6), 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), 7–101(A)(3), 9–102(B)(3), and 9–102(B)(4).

### Count Three

{¶ 7} Barbara Browning paid respondent a $600 retainer in August 2002 to initiate and pursue a Chapter 7 bankruptcy case on her behalf. Respondent did not file the bankruptcy petition until December 2003. In the meantime, Browning received numerous calls from a creditor. She tried repeatedly to speak with respondent by telephone, but he never returned her calls. After the bankruptcy petition was filed, Browning attended a scheduled hearing in the bankruptcy court. Respondent did not attend. Browning's debt was discharged in May 2004. Respondent never refunded any of the money Browning had paid him.

{¶ 8} The board found that respondent had thereby violated DR 1–102(A)(6), 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), and 7–101(A)(3).

### Count Four

{¶ 9} Kevin and Pamela Heim paid respondent a $625 retainer in December 2002 to initiate and pursue a Chapter 7 bankruptcy case on their behalf. Respondent did not file the bankruptcy petition until July 2003. In the meantime, the Heims received calls at home and work from creditors. Pamela Heim tried repeatedly to speak with respondent by telephone, but he never returned her calls. After the bankruptcy petition was filed, the Heims attended a scheduled hearing in the bankruptcy court, and their debt was discharged in October 2003. Respondent did not attend the hearing in the bankruptcy court and never refunded any of the money that the Heims had paid him.

{¶ 10} The board found that respondent had thereby violated DR 1–102(A)(6), 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), and 7–101(A)(3).

{¶ 11} As to all four counts, the board also found that respondent had violated Gov.Bar R. V(4)(G) (requiring attorneys to cooperate with and assist in any disciplinary investigation). Relator Stark County Bar Association sent ten letters

to respondent in 2003 and 2004 asking him to respond to the various grievances filed against him, but he never replied to any of the letters.

## II. The Cuyahoga County Complaint

### Count One

{¶ 12} Betty Albano retained respondent in January 2003 to prepare a fiduciary deed and a warranty deed transferring the ownership of real property that had been owned by her late father. Respondent was to file the documents with the county recorder and send copies to Albano, who paid respondent $129 for his services. Respondent never recorded the deeds. He also canceled appointments with Albano and failed to return her calls when she inquired about the status of the deeds. In addition, respondent failed to reply to the four letters sent to him by relator Cuyahoga County Bar Association in connection with its investigation of the grievance that Albano had filed against him in early 2004.

{¶ 13} Respondent admitted and the board found that he had thereby violated DR 6–101(A)(3), 7–101(A)(2), and Gov.Bar R. V(4)(G). The board also found that respondent had violated DR 1–102(A)(6).

### Count Two

{¶ 14} Gregory S. Cameron paid respondent a $600 retainer and filing fee in March 2002 to initiate and pursue a bankruptcy case on his behalf. Respondent prepared the bankruptcy petition but never filed it. Cameron filed a grievance against respondent in October 2003. Respondent did not reply to five letters sent to him in 2003 and 2004 by relator Cuyahoga County Bar Association as part of its investigation of that grievance.

{¶ 15} Respondent admitted and the board found that respondent had thereby violated DR 7–101(A)(2), 9–102(A) (requiring a lawyer to deposit client funds in a trust account), and Gov.Bar R. V(4)(G). The board also found that respondent had violated DR 1–102(A)(6) and 6–101(A)(3).

### Count Three

{¶ 16} Sylvia Graham paid respondent a $215 retainer in December 2003 to prepare a power of attorney for her and to file that document with the county recorder. Respondent performed these services but failed to deliver a copy to Graham as he had promised. Graham tried repeatedly between December 2003 and March 2004 to contact respondent about the status of the document. Respondent failed to return all but one of her calls. Graham eventually obtained a copy of the document herself from the county recorder's office and discovered that her son Patrick had been incorrectly identified in the power of attorney as "Patricia." She brought the error to respondent's attention. He promised to prepare and file a corrected document but never did so. Graham then engaged

another attorney to prepare and file the corrected document, and she also filed a grievance against respondent. Respondent did not reply to three letters sent to him in 2004 by relator Cuyahoga County Bar Association as part of its investigation of that grievance.

{¶ 17} Respondent admitted and the board found that respondent had thereby violated DR 7–101(A)(2) and Gov.Bar R. V(4)(G). The board also found that respondent had violated DR 1–102(A)(6) and 6–101(A)(3).

### Count Four

{¶ 18} In December 2003, respondent overdrew the account into which he is required to deposit funds entrusted to him by clients. The negative balance in the account triggered a disciplinary investigation, and respondent failed to reply to four letters sent to him in 2004 seeking information about the overdraft.

{¶ 19} Respondent admitted and the board found that respondent had thereby violated Gov.Bar R. V(4)(G). The board also found that respondent had violated DR 9–102(B)(3).

### Sanction

{¶ 20} In recommending a sanction for respondent's misconduct, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). As aggravating factors, the board found that respondent had committed a pattern of misconduct and multiple offenses, had not cooperated in the disciplinary process, and had failed to make restitution. BCGD Proc.Reg. 10(B)(1)(c), (d), (e), and (i).

{¶ 21} The board did note two mitigating factors: the absence of any prior disciplinary record and the absence of a dishonest or selfish motive. BCGD Proc.Reg. 10(B)(2)(a) and (b). Respondent also cited his hypertension and depression as additional mitigating factors and explained that the medications he took for his hypertension left him feeling very tired and unable to stay focused on his work. Those facts alone do not qualify as mitigating factors under the board's rules, however, and respondent did not offer any evidence, as BCGD Proc.Reg. 10(B)(2)(g) requires, to show that he had been diagnosed by a qualified health-care professional as chemically dependent or mentally disabled. He also did not show that a chemical dependency or a mental disability had contributed to his misconduct.

{¶ 22} The panel recommended that respondent be suspended from the practice of law for two years, with the entire suspension stayed on conditions. The board modified this recommendation, finding that respondent should be suspend-

ed from the practice of law for two years, with 18 months of the suspension stayed on conditions. The board also recommended probation during the stayed period.

{¶ 23} We agree with the board that respondent committed all of the violations detailed above. We also agree with the sanction recommended by the board. The multiple, repetitive violations are troubling, as is respondent's repeated failure to reply to relators' inquiries about his misconduct. To be sure, he contends that some medications he must take make him sleepy and fatigued, but that problem certainly does not excuse his neglect of his clients' needs. Disconcerting as well is the board's finding that respondent has not apologized or paid any restitution to the clients whose legal matters he neglected.

{¶ 24} We have said in past cases that the "sanction of an indefinite suspension from the practice of law 'is especially fitting * * * where neglect of a legal matter is coupled with a failure to cooperate in the ensuing disciplinary investigation.'" *Disciplinary Counsel v. Henderson* (1999), 87 Ohio St.3d 219, 221, 718 N.E.2d 1277, quoting *Warren Cty. Bar Assn. v. Lieser* (1997), 79 Ohio St.3d 488, 490, 683 N.E.2d 1148. Even so, in this case, we accept the board's recommendation because the respondent's misconduct, while serious, did not involve dishonesty and did not result in irreparable harm to his clients.

{¶ 25} Accordingly, respondent is hereby suspended from the practice of law in Ohio for a period of two years; however, the last 18 months of the suspension are stayed, and upon reinstatement, respondent shall be placed on probation under the following conditions:

{¶ 26} A monitor shall be appointed for respondent by relator Cuyahoga County Bar Association and, pursuant to Gov.Bar R. V(9), respondent must fully comply with any terms imposed by the monitor during the stayed portion of the suspension;

{¶ 27} Respondent shall seek and adhere to professional medical and psychological advice and treatment during the suspension period. Any application for reinstatement filed by respondent shall include a qualified health-care professional indicating that respondent is able to undertake the competent, ethical, and professional practice of law;

{¶ 28} Respondent shall comply with any conditions related to the practice of law that are recommended for him by qualified health-care professionals;

{¶ 29} Respondent shall immediately make full restitution to (a) Priscilla McGuire in the amount of $600, (b) William and Crystal Miller in the amount of $625, (c) Betty Albano in the amount of $129, (d) Gregory Cameron in the amount of $600, and (e) Sylvia Graham in the amount of $215; and

{¶ 30} Respondent shall pay all costs associated with this case.

{¶ 31} If respondent violates any of these conditions, the stay will be lifted, and respondent will serve the entire term as a period of actual suspension.

Judgment accordingly.

MOYER, C.J., RESNICK, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

PFEIFER, J., would suspend respondent for two years, all stayed on conditions.

---

Tzangas, Plakas, Mannos & Raies, David L. Dingwell, and Richard S. Milligan, for relator Stark County Bar Association.

Schulman, Schulman & Meros and Howard A. Schulman; Ellen S. Mandell; Landskroner Grieco Madden, Ltd. and Justin F. Madden, for relator Cuyahoga County Bar Association.

Gallagher, Sharp, Fulton & Norman, Alton L. Stephens, Alan M. Petrov, Julie L. Juergens, and J. Colin Knisely, for respondent.