CLEVELAND BAR ASSOCIATION *v.* CHURCH.

[Cite as *Cleveland Bar Assn. v. Church,*
114 Ohio St.3d 41, 2007-Ohio-2744.]

(No. 2006–2308—Submitted February 14, 2007—Decided June 20, 2007.)

**Per Curiam.**

{¶ 1} Respondent, Joseph Jeffrey Church of Solon, Ohio, Attorney Registration No. 0006961, was admitted to the practice of law in Ohio in 1979. The Board of Commissioners on Grievances and Discipline recommends that we now indefinitely suspend respondent's license to practice based on findings that he abandoned two clients' cases and also failed to respond as required during the investigation of his clients' grievances. On review, we adopt the board's findings that respondent committed professional misconduct and hold that an indefinite suspension is appropriate.

{¶ 2} Relator, Cleveland Bar Association, alleged in a three-count complaint that respondent had committed, along with other misconduct not found by the board, violations of DR 1–102(A)(5) (prohibiting conduct that is prejudicial to the administration of justice) and 6–101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter) and Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate during a disciplinary investigation). The board served respondent with the complaint by certified mail, but respondent did not answer, and pursuant to Gov.Bar R. V(6)(F), relator moved for default. A master commissioner appointed

by the board granted the motion, making findings of fact and conclusions of law and a recommendation, all of which the board adopted.

## Misconduct

### Count I—The Allen Grievance

{¶ 3} In July 2003, Lisa Allen and her husband retained respondent to represent them in bankruptcy proceedings. Respondent promised to prepare and file a bankruptcy petition on the Allens' behalf after they paid his $1,200 fee. The Allens paid the fee by August 4, 2003.

{¶ 4} For the next seven months, the Allens tried to communicate with respondent but had no success. By March 2004, the couple urgently needed their lawyer's help because one or more creditors had succeeded in garnishing $906 from Lisa's checking account. The Allens finally did speak with respondent in March, and he promised to file their bankruptcy petition before the end of April 2004. The Allens hired a new attorney, who filed their bankruptcy petition before the end of March 2004.

{¶ 5} Respondent's neglect deprived the Allens of bankruptcy protection and exposed them to garnishment proceedings. He also never repaid the Allens any unearned fees. By abandoning the Allens' bankruptcy case, respondent violated DR 1–102(A)(5) and 6–101(A)(3).

### Count II—The Kennedy Grievance

{¶ 6} In December 2003, Charlotte Kennedy and her husband retained respondent to represent them in a contract dispute with American Resorts International ("ARI"). The Kennedys paid respondent $1,000, and he agreed in writing to pursue their claim for that amount plus 25 percent of any recovery in the lawsuit against ARI.

{¶ 7} By the time the Kennedys hired respondent, they had already filed a complaint against ARI in a local municipal court. Respondent advised the couple that he intended to ask the municipal court to dismiss their case without prejudice and to sue ARI in the Cuyahoga County Court of Common Pleas. The municipal court eventually dismissed the Kennedys' case in July 2004, without prejudice, for failure to pay court costs. Respondent never refiled the case.

{¶ 8} By abandoning the Kennedys' contract case, respondent violated DR 1–102(A)(5) and 6–101(A)(3).

### Count III—Failure to Respond During the Disciplinary Investigation

{¶ 9} After the Allens filed a grievance against respondent in June 2004, relator sent two letters by regular mail and one by certified mail, all addressed to the address on file for respondent in the Office of Attorney Registration, to notify

him of the grievance and request a response. The United States Postal Service returned the certified letter as unclaimed but did not return the regular mail letters as undeliverable. Respondent did not respond as requested to any of relator's efforts to contact him.

{¶ 10} After the Kennedys filed a grievance in July 2004, respondent signed the certified receipt for a letter that advised him of the grievance and requested a response. He did not reply. Relator then sent another letter, this time by regular mail, which the post office did not return as undeliverable, asking respondent again to respond. He did not.

{¶ 11} In August 2004, relator's investigator actually spoke to respondent on the telephone. When the investigator asked why he had not answered investigative inquiries, respondent said that he had not received any correspondence about the two grievances. The investigator then transmitted the letters of inquiry by facsimile to respondent, who promised to call the investigator back if he did not receive them. Respondent never called back, nor did he respond to a fourth letter requesting his response to the Allen grievance.

{¶ 12} In October 2005, relator sent notice of intent to file a formal complaint to respondent by certified and regular mail, notifying him of the formal disciplinary charges to be filed. The certified letter went unclaimed, but the post office did not return the regular mail letter as undeliverable. Respondent did not respond.

{¶ 13} By ignoring relator's investigative inquiries, respondent violated Gov. Bar R. V(4)(G).

## Sanction

{¶ 14} When imposing sanctions for attorney misconduct, we consider the duties violated, the actual or potential injury caused, the attorney's mental state, and sanctions imposed in similar cases. *Disciplinary Counsel v. Brown* (1999), 87 Ohio St.3d 316, 720 N.E.2d 525. Before making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). Id.; see, also, *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, and *Cleveland Bar Assn. v. Glatki* (2000), 88 Ohio St.3d 381, 726 N.E.2d 993.

{¶ 15} Respondent neglected his duty to diligently pursue his clients' claims, causing them financial loss and inconvenience, the very results that they had paid him to prevent. By failing to participate, even after a personal request, in the process that enforces the high ethical standards of the Ohio bar, he also intentionally breached his duty to the legal profession.

{¶ 16} Relator advocated respondent's permanent disbarment. In *Cleveland Bar Assn. v. Judge* (2002), 94 Ohio St.3d 331, 763 N.E.2d 114, however, another lawyer neglected two clients' cases, ignored investigative inquiries into their grievances, and did not appear at a hearing on the charges of misconduct. We imposed an indefinite suspension, observing the rule that " '[n]eglect of legal matters and a failure to cooperate in the ensuing disciplinary investigation generally warrant an indefinite suspension from the practice of law in Ohio.' " Id. at 332, 763 N.E.2d 114, quoting *Akron Bar Assn. v. Snyder* (1999), 87 Ohio St.3d 211, 212, 718 N.E.2d 1271. See, also, *Disciplinary Counsel v. Henderson* (1999), 87 Ohio St.3d 219, 221, 718 N.E.2d 1277, and *Warren Cty. Bar Assn. v. Lieser* (1997), 79 Ohio St.3d 488, 490, 683 N.E.2d 1148.

{¶ 17} The master commissioner and board found no mitigating factors but did find the following aggravating factors: a pattern of misconduct, lack of cooperation in the disciplinary process, failure to acknowledge the wrongful nature of his conduct, and failure to make restitution. See BCGD Proc.Reg. 10(B)(1)(c), (e), (g), and (i). But the master commissioner and board both recommended, consistent with the cited case law, that respondent's license be indefinitely suspended. We accept this recommendation.

{¶ 18} Respondent is therefore indefinitely suspended from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER and CUPP, JJ., concur.

---

Gallagher Sharp, Alan M. Petrov, and Darlene E. White, for relator.