LORAIN COUNTY BAR ASSOCIATION *v.* ROBINSON.

[Cite as *Lorain Cty. Bar Assn. v. Robinson,*
121 Ohio St.3d 24, 2009-Ohio-262.]

(No. 2008–1202—Submitted August 26, 2008—Decided January 29, 2009.)

---

**Per Curiam.**

{¶ 1} Respondent, J. Terry Robinson of Elyria, Ohio, Attorney Registration No. 0068785, was admitted to the practice of law in Ohio in 1997. The Board of Commissioners on Grievances and Discipline recommends that we indefinitely suspend respondent's license to practice, based in part on findings that he abandoned multiple clients in their attempts to obtain bankruptcy protection. We agree that respondent committed this professional misconduct and that an indefinite suspension is appropriate.

{¶ 2} Relator, Lorain County Bar Association, charged respondent in a four-count complaint with violations of the Code of Professional Responsibility, the Rules of Professional Conduct that have superseded the Disciplinary Rules, and Gov.Bar R. V(4)(G) (requiring lawyers to cooperate in grievance investigations). Respondent received notice of the complaint, but did not answer, and relator moved for default. See Gov.Bar R. V(6)(F). A master commissioner appointed by the board granted the motion and made findings of misconduct and recommended the indefinite suspension. The board adopted the panel's findings and recommendation.

## Misconduct

{¶ 3} In adopting the master commissioner's report, the board found violations of Gov.Bar R. V(4)(G) and Prof.Cond.R. 8.1 (providing, with an exception not relevant here, that "in connection with a disciplinary matter, a lawyer shall not do any of the following: * * * (b) in response to a demand for information from [a] * * * disciplinary authority, fail to disclose a material fact or knowingly fail to respond * * *"). To substantiate these allegations in its motion for default, relator submitted copies of letters of inquiry addressed to respondent with copies of executed certified receipts and copies of subpoenas ordering respondent to appear for meetings with relator, with copies of executed returns of service. Relator also did not provide the investigator's affidavit typically offered to authenticate such reproductions and to establish that the respondent lawyer knew of the investigative efforts but failed to respond or comply as directed. See, e.g., *Cleveland Bar Assn. v. McNally*, 109 Ohio St.3d 560, 2006-Ohio-3258, 849 N.E.2d 1022, ¶ 5.

{¶ 4} Gov.Bar R. V(6)(F)(b) requires that allegations in a motion for default be supported by "[s]worn or certified documentary prima facia evidence," see *Dayton Bar Assn. v. Sebree*, 104 Ohio St.3d 448, 2004-Ohio-6560, 820 N.E.2d 318, ¶ 3, and the rule applies equally to alleged violations of Gov.Bar R. V(4)(G) and Prof.Cond.R. 8.1. *McNally* at ¶ 5. Relator has not supplied sworn or certified prima facia evidence to show that respondent (1) failed to cooperate in the disciplinary investigation of the underlying grievances or (2) in response to a demand for information from a disciplinary authority failed to disclose a material

fact or knowingly failed to respond. We therefore do not find violations of Gov.Bar R. V(4)(G) or Prof.Cond.R. 8.1 pursuant to the motion for default.

{¶ 5} In contrast, grievants' affidavits filed in support of the motion for default do chronicle repeated instances of respondent's having agreed to pursue bankruptcies for his clients and then deserting them. In the main, these affidavits specify acts of misconduct that occurred before February 1, 2007, the effective date of the Rules of Professional Conduct. Because respondent's Disciplinary Rule violations are more than sufficient to justify the recommended indefinite suspension of his license to practice, we confine our focus to that misconduct.

## Count I—The Williams Grievance

{¶ 6} Jerry T. Williams Sr. consulted respondent in April 2006 about filing bankruptcy and to stop foreclosure proceedings against his home. Williams paid respondent $1,200 to take the case and gave him various records to prepare the bankruptcy petition. Williams frequently telephoned respondent, expressing his concerns about the possibility of foreclosure and notice of the sheriff's sale appearing in the newspaper. Respondent always reassured Williams, telling him that "everything was all right" and that no notice would be published.

{¶ 7} Respondent did not file the Williams bankruptcy petition until early September 2006. In the meantime, public notice of a sheriff's sale to auction Williams's home did appear, much to Williams's consternation. Later that October, respondent did not appear when the trustee in the Williams bankruptcy held a creditor's meeting. By that time, respondent had apparently resigned from his law firm, and another lawyer unknown to Williams appeared on Williams's behalf. The new lawyer, whom Williams claims he had never retained, apparently saw the bankruptcy through to a discharge in mid-December 2006.

{¶ 8} As the board found, respondent violated DR 6–101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter) and 7–101(A)(3) (prohibiting a lawyer from intentionally causing a client damage or prejudice during the course of the professional relationship) by waiting to file bankruptcy for Williams for over five months, until after notice of the sheriff's sale had been published, and then quitting the case without notice. We adopt these findings of misconduct.

## Count II—The Jones Grievance

{¶ 9} Brian Jones had much the same experience with respondent as Williams did. Jones consulted respondent about filing bankruptcy in June 2006, paid him $1,600 to take the case, and gave him various records to prepare the bankruptcy petition. Jones also kept telephoning respondent to check on the status of the case, and respondent repeatedly reassured him that all was well and that he would soon file the petition.

{¶ 10} Respondent waited three months after being retained and one month after being paid in full before filing the Jones bankruptcy. In the interim, respondent scheduled three meetings with Jones but failed to keep the appointments. Respondent then failed to appear at a bankruptcy hearing in October 2006, sending in his place an associate from his former firm whom Jones did not know and thought was inexperienced.

{¶ 11} Jones later received notice that the bankruptcy court planned to dismiss his case for various irregularities in court filings. Respondent told Jones that he would handle the problem, but did nothing to correct the deficiencies. In December 2006, the bankruptcy court dismissed the Jones bankruptcy case, and within days, Jones's creditors began collection efforts. After the dismissal, respondent told Jones that he had refiled the case when he had not. The attorney who later took over the Jones case apparently obtained a discharge in bankruptcy for Jones.

{¶ 12} As the board found, respondent violated DR 1–102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and 7–102(A)(5) (prohibiting a lawyer from knowingly making a false statement of fact or law) by misrepresenting to his client the status of his bankruptcy case. The board also found respondent in violation of DR 6–101(A)(3) and 7–101(A)(3) because he allowed his client's case to languish after the court warned of filing deficiencies and possible dismissal. We accept these findings of misconduct.

### Count III—The Gillespie Grievance

{¶ 13} Respondent also abandoned Herbert Gillespie Jr. after agreeing to represent him in bankruptcy. Gillespie hired respondent in February 2006, paid him $1,850, and gave him records from which to prepare the necessary filings. When Gillespie called to check on the status of his bankruptcy case, respondent reassured him repeatedly that he had filed the petition when he had not.

{¶ 14} Respondent did not file Gillespie's bankruptcy petition until January 2007, 11 months after he was hired. By that time, Gillespie had suffered garnishments of approximately $1,000. The bankruptcy court eventually dismissed the Gillespie bankruptcy case for respondent's failure to appear and show cause why he had not paid the filing fee or filed necessary papers. Respondent later refunded Gillespie's legal fee but did not return his papers, and Gillespie had to hire another lawyer to complete his bankruptcy.

{¶ 15} As the board found, respondent violated DR 1–102(A)(4) and 7–102(A)(5) by misrepresenting the status of Gillespie's bankruptcy case. The board also found that respondent had neglected Gillespie's case in violation of DR 6–101(A)(3) and, by allowing creditor garnishments, had intentionally prejudiced

Gillespie in violation of DR 7–101(A)(3). We accept these findings as well as the board's finding that respondent violated DR 1–102(A)(5) (prohibiting a lawyer from engaging in conduct prejudicial to the administration of justice).

### Count IV—The Lennerth Grievance

{¶ 16} Respondent continued his pattern of neglect and misleading clients in Michael Lennerth's case. Lennerth hired respondent in May 2006 to file a petition in bankruptcy. From that time until he actually filed the petition in late November 2006, respondent reassured Lennerth, when he communicated with him at all, that the bankruptcy case had been filed when it had not been.

{¶ 17} The bankruptcy court ordered respondent to appear and show cause in mid-December 2006 why he had failed to correct various deficiencies in the bankruptcy filings. He failed to appear, and the court dismissed the Lennerth bankruptcy petition. Respondent's continuing inaction before the bankruptcy court, including his failure to oppose a mortgage company's motion for relief from the automatic stay, led to the foreclosure and sale of Lennerth's home. Respondent remitted his fee to Lennerth, but Lennerth ultimately had to retain another bankruptcy attorney, causing him to incur $1,598 in fees.

{¶ 18} As the board found, respondent violated DR 1–102(A)(4) and 7–102(A)(5) by misrepresenting the status of Lennerth's bankruptcy case. The board also found that respondent had neglected Lennerth's case in violation of DR 6–101(A)(3) and, by failing to do anything to prevent the foreclosure of Lennerth's home, had intentionally prejudiced Gillespie in violation of DR 7–101(A)(3). We accept these findings as well as the board's finding that respondent violated DR 1–102(A)(5).

### Sanction

{¶ 19} During relator's investigation, respondent communicated his desire "to resolve all cases and complaints and close [his] bankruptcy practice." His license has been listed as inactive since November 30, 2007. Apparently, he has stopped practicing law to accept other employment.

{¶ 20} Respondent failed to initiate proceedings as promised and failed to communicate with his clients after having been engaged and paid. When he did file the cases, his filings were usually deficient, with errors that he did not correct even after the court ordered him to do so. Respondent's misrepresentations and inattention to his clients' interests resulted in garnishment, foreclosure, and added legal expense.

{¶ 21} Respondent's misconduct is commensurate with that committed in *Cleveland Bar Assn. v. Church,* 114 Ohio St.3d 41, 2007-Ohio-2744, 867 N.E.2d 834, in which we indefinitely suspended the license of an attorney for failing to

file a bankruptcy petition as promised, failing to refile a contract action that he had earlier dismissed, violating Gov.Bar R. V(4)(G), and failing to answer the disciplinary complaint. We applied the rule that neglect of legal matters combined with a failure to cooperate in disciplinary proceedings warrants an indefinite suspension. Id. at ¶ 16.

{¶ 22} Indefinite suspension is equally appropriate here inasmuch as respondent did not honor four requests for him to file bankruptcy, misled clients when he did not file the bankruptcy as he represented he did, and then defaulted in answer to the charges against him. We therefore indefinitely suspend respondent from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

———————

D. Chris Cook, for relator.