DISCIPLINARY COUNSEL *v.* NOEL.

[Cite as *Disciplinary Counsel v. Noel*, 126 Ohio St.3d 56, 2010-Ohio-2714.]

*Attorney misconduct, including neglecting entrusted legal matters and failing to cooperate in disciplinary investigation — Two-year suspension with six months stayed on conditions.*

(No. 2009-2301 — Submitted February 17, 2010 — Decided June 17, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 09-046.

_____

**Per Curiam**.

{¶ 1} Respondent, Gerald Thomas Noel Jr. of Columbus, Ohio, Attorney Registration No. 0063972, was admitted to the practice of law in Ohio in 1994. In June 2009, relator, Disciplinary Counsel, filed a complaint charging respondent with violations of the Code of Professional Responsibility, the Ohio Rules of Professional Conduct, and the Supreme Court Rules for the Government of the Bar. Although the complaint was served upon respondent by certified mail at his home address on August 15, 2009, he failed to file an answer. In November 2009, relator moved for default pursuant to Gov.Bar R. V(6)(F).

{¶ 2} The board referred the motion to a master commissioner, who found that respondent had neglected two client matters, failed to promptly deliver a client's file at the conclusion of his representation, knowingly ignored his obligation to provide requested discovery in a civil action, and failed to cooperate in a disciplinary investigation by (1) failing to respond to a demand for information from a disciplinary authority and (2) knowingly making false statements of fact in connection with the disciplinary investigation. The master commissioner concluded that this conduct violated Gov.Bar R. V(4)(G), DR 6-

101(A)(3), and five of the Rules of Professional Conduct and recommended that respondent be suspended from the practice of law for two years, with six months stayed on the conditions that respondent (1) engage in no further misconduct and (2) complete at least six hours of continuing legal education in law-office management.

{¶ 3}   The board adopted the master commissioner's findings, including that the materials offered in support of the motion for default were sufficient, and his conclusions of law.  While the board agreed that we should impose a two-year suspension, it recommended that 18 months of that suspension be stayed on the conditions recommended by the master commissioner.

**Misconduct**

{¶ 4}   In a disciplinary proceeding, relator must prove a lawyer's professional misconduct by clear and convincing evidence.  Gov.Bar R. V(6)(J); *Akron Bar Assn. v. Catanzarite*, 119 Ohio St.3d 313, 2008-Ohio-4063, 893 N.E.2d 835, ¶ 5.  And pursuant to Gov.Bar R. V(6)(F)(1)(b), a motion for default in a disciplinary proceeding must be supported by "[s]worn or certified documentary prima facie evidence in support of the allegations made."

{¶ 5}   Relator submitted transcripts of respondent's December 18, 2008 and February 6, 2009 deposition testimony, seven purported affidavits, and 65 additional exhibits in support of its motion for default.  But the purported affidavits are photocopies, not the original signed and notarized documents.  Moreover, relator has not provided an investigator's affidavit to authenticate the other exhibits submitted in support of its motion for default.  See, e.g., *Lorain Cty. Bar Assn. v. Robinson*, 121 Ohio St.3d 24, 2009-Ohio-262, 901 N.E.2d 783, ¶ 3.  Because these documents are neither sworn nor certified as required by Gov.Bar R. V(6)(F)(1)(b), they are not proper evidence in support of a default motion.  Therefore, in ruling upon relator's default motion, we consider only the

transcripts of respondent's deposition testimony and the exhibits admitted during the deposition.

*Count I*

{¶ 6}   The allegations in Count I relate to respondent's failure to take all the steps necessary to perfect a client's appeal of a criminal conviction in the United States Court of Appeals for the Sixth Circuit.   Due to respondent's inaction, the court dismissed the client's appeal for want of prosecution.

{¶ 7}   Respondent's deposition reveals that he had represented the client at trial and that at the conclusion of the sentencing hearing, he informed the trial court that his client wished to appeal.   He also informed the court that his client was indigent and needed court-appointed counsel.   At the court's direction, the clerk prepared and filed a notice of appeal.   Respondent had never handled an appeal in the Sixth Circuit and was not familiar with that court's local rules, including 6 Cir.R. 101(a), which provides, "Trial counsel in criminal cases, whether retained or appointed by the district court, is responsible for the continued representation of the client on appeal until specifically relieved by this court."   Believing that the trial court had granted his request to withdraw from representation, respondent did not pay the required filing fee, file a form of appearance, or file a transcript purchase order in the client's appeal.

{¶ 8}   Respondent had no knowledge of any letters from the appellate court regarding the status of the appeal until he began to prepare for his deposition in this case.   He then discovered the letters in the file and assumed that his secretary, believing the case to be closed, had filed the correspondence without showing it to him.   Respondent did admit certain facts.   He had received telephone calls from the appellate court concerning the status of the appeal and agreed to provide documentation of his withdrawal.   He failed to provide the requested information and failed to follow the caller's instructions to properly withdraw from the case.   Respondent testified that the case was not on his "high-

3

priority burner," because he thought that his representation had ended with the sentencing hearing.

{¶ 9} Respondent also admitted that he had received two letters from relator about this client's grievance and that he had not submitted a response. He claimed that he had forgotten to respond to the first letter and that he had drafted a response to the second letter but had never mailed it. He did not recall receiving a third letter from relator, but did recall the letter's content, which warned that a subpoena would be issued to compel his appearance if he did not respond. Respondent claimed that the subpoena arrived shortly after the letter and before he had the chance to prepare a response.

{¶ 10} Throughout his deposition testimony, respondent attempted to justify his inaction and deny responsibility for his misconduct. He claimed, "I asked to get off of it [the appeal]. I wasn't paid for it. I didn't have any money to pay for his filing fee or anything." And he claimed, "[T]his was a situation that I sort of created but didn't create." He also blamed his secretary for putting letters into the client's file without bringing them to his attention. Respondent did, however, admit that he had not assigned a high priority to the matter, stating, "The way my practice works, I kind of work on crisis. * * * And so I didn't, basically, categorize this internally as—as a crisis * * *."

{¶ 11} The board found that respondent's conduct with respect to this client violated Prof.Cond.R. 1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client) and 8.4(d) (prohibiting a lawyer from engaging in "conduct that is prejudicial to the administration of justice"). We accept these findings and also find that by failing to respond to relator's inquiries with respect to Count I, respondent violated Prof.Cond.R. 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information from a disciplinary authority during an investigation) and Gov.Bar R. V(4)(G) (requiring

4

a lawyer to cooperate with a disciplinary investigation), as charged in the complaint.

*Count II*

{¶ 12} Count II arises from respondent's representation of a client who had been in an automobile accident with a Central Ohio Transit Authority ("COTA") bus in 2002. Respondent met the client at the courthouse in 2004, after she learned that her previous attorney had dismissed her case. After talking with her at his office, and agreeing to take her case, respondent refiled the complaint.

{¶ 13} Respondent admitted that he had failed to provide the materials that COTA sought in discovery but blamed his failure on the client's refusal to submit to an independent medical examination and her failure to submit complete answers to COTA's interrogatories. He acknowledged that the trial court had granted COTA's request for attorney fees as a sanction for discovery violations but noted that the court had never fixed the amount of that sanction. Respondent also acknowledged that he had not opposed, and the trial court had later granted, COTA's motion to dismiss his client's action with prejudice for failure to prosecute.

{¶ 14} Addressing allegations that the client had had difficulty reaching him, respondent admitted that he had sometimes ignored her telephone calls when he had nothing to report, that he had sometimes missed scheduled appointments due to his obligations in court, and that the voicemail on his cell phone had often been full.

{¶ 15} When the client sought to retrieve her file from respondent, he told her that he did not think another attorney would take her case because three attorneys had already represented her, which was "a big red flag" that something was wrong with her case. Notably, he failed to explain that her case had been dismissed *with prejudice* and, therefore, could not be refiled.

**{¶ 16}** Respondent denied relator's allegations that he had missed an appointment to return the client's file. He explained that he had left the file out in anticipation of the client's arrival, but that the receptionist, who worked for another attorney in his building, had not seen it. He did, however, admit that he had made no other efforts to return the file to the client.

**{¶ 17}** With regard to allegations that respondent had failed to cooperate in the resulting disciplinary investigation, respondent acknowledged that he had received a letter on October 21, 2008, from the Columbus Bar Association notifying him of the client's grievance. But he explained that he had not responded, because he believed that it was a duplicate notice of the grievance underlying Count I.

**{¶ 18}** The board concluded that respondent's conduct violated DR 6-101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter), Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.15(d) (requiring a lawyer to promptly deliver funds or other property that the client is entitled to receive), 3.4(c) (prohibiting a lawyer from knowingly disobeying an obligation under the rules of a tribunal), 8.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact in connection with a disciplinary matter), 8.1(b), and 8.4(d), and Gov.Bar R. V(4)(G). We accept the board's conclusion that respondent's conduct violated DR 6-101(A)(3), Prof.Cond.R. 1.3, 1.15(d)[1], 8.1(b), and 8.4(d), and Gov.Bar R. V(4)(G). However, we dismiss the alleged violations of Prof.Cond.R. 3.4(c) and 8.1(a) because they are not supported by sufficient sworn or certified evidence.

### Sanction

---

1. Although we agree with the board's finding that respondent violated Prof.Cond.R. 1.15(d), it appears that Prof.Cond.R. 1.16(d) (requiring a lawyer upon termination of representation to promptly deliver to the client papers and property belonging to the client) is the more fitting rule for the charged conduct.

{¶ 19} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 20} The master commissioner and the board determined that the following BCGD Proc.Reg. 10(B)(1) aggravating factors are present: (d) multiple offenses, (e) lack of cooperation in the disciplinary process, (g) refusal to acknowledge the wrongful nature of the conduct, and (h) vulnerability of and resulting harm to the victims of the misconduct. In mitigation, the master commissioner and board noted that respondent has no prior disciplinary record. See BCGD Proc.Reg. 10(B)(2)(a).

{¶ 21} Having weighed these factors, the master commissioner and the board have recommended that we suspend respondent from the practice of law for two years. The board, however, rejected the master commissioner's recommendation to stay only the last six months of that suspension and recommends that we stay the last 18 months of the suspension on the conditions that respondent (1) engage in no further misconduct and (2) complete at least six hours of continuing legal education in law-office management.

{¶ 22} In *Cleveland Metro. Bar Assn. v. Kaplan*, 124 Ohio St.3d 278, 2010-Ohio-167, 921 N.E.2d 645, we recognized that " '[a] lawyer's neglect of legal matters and failure to cooperate in the ensuing disciplinary investigation generally warrant an indefinite suspension from the practice of law in Ohio.' " Id.

at ¶ 15, quoting *Akron Bar Assn. v. Goodlet*, 115 Ohio St.3d 7, 2007-Ohio-4271, 873 N.E.2d 815, ¶ 20.

{¶ 23} In *Kaplan*, the attorney had failed to maintain a record documenting his receipt of a client's fee, failed to promptly comply with reasonable client requests for information, and failed to cooperate in the resulting disciplinary proceeding. Id. at ¶ 16. As aggravating factors in that case, the board found that the attorney engaged in a pattern of misconduct involving multiple offenses, failed to cooperate in the disciplinary process, refused to acknowledge the wrongful nature of his conduct, was deceptive during the disciplinary process regarding when he would mail a check to one of his former clients, and failed to make restitution to another former client. Id. at ¶ 7, 12. In mitigation, the board found that respondent had practiced for more than 30 years without disciplinary action. Id. at ¶ 13. Based upon those findings, we concluded that Kaplan's conduct warranted an indefinite suspension.

{¶ 24} However, in *Cuyahoga Cty. Bar Assn. v. Muhlbach* (1999), 86 Ohio St.3d 547, 715 N.E.2d 1134, we concluded that a lesser sanction than an indefinite suspension was appropriate for an attorney who had neglected an entrusted legal matter, failed to carry out an employment contract, and failed to cooperate in the ensuing disciplinary investigation. Noting the lack of evidence of substantial damage to the client and the attorney's eventual cooperation in the disciplinary investigation, we imposed a one-year suspension. Id. at 549.

{¶ 25} Similarly, in *Stark Cty. Bar Assn. v. Marosan*, 106 Ohio St.3d 430, 2005-Ohio-5412, 835 N.E.2d 718, we suspended an attorney for two years, with 18 months stayed on conditions, based upon his neglect of the entrusted legal matters of multiple clients, his failure to promptly return unearned fees to those clients, his failure to maintain a client trust account, and his failure to cooperate in the ensuing disciplinary investigation. Aggravating factors in *Marosan* included a pattern of misconduct involving multiple offenses, lack of cooperation in the

disciplinary process, and failure to pay restitution. Id. at ¶ 20. Mitigating factors included the absence of prior discipline and the absence of a dishonest or selfish motive. Id. at ¶ 21. We accepted the board's recommendation of a more lenient sanction than indefinite suspension, stating that "the respondent's misconduct, while serious, did not involve dishonesty and did not result in irreparable harm to his clients." Id. at ¶ 24.

{¶ 26} In this case, the record demonstrates by clear and convincing evidence that respondent neglected the legal matters of two clients, resulting in the dismissal of a criminal appeal and the dismissal with prejudice of a civil case. He also failed to timely deliver a client's file and failed to cooperate in the disciplinary investigation.

{¶ 27} Based on our review of respondent's conduct, as well as the aggravating and mitigating factors, we conclude that his conduct was not as egregious as that of Kaplan. But the resulting harm to his clients renders his conduct more serious than that of Muhlbach and Marosan. Accordingly, Gerald Thomas Noel Jr. is suspended from the practice of law in the state of Ohio for two years, with six months stayed on the conditions that respondent (1) engage in no further misconduct and (2) complete at least six hours of continuing legal education in law-office management. If he fails to comply with the terms of the stay, the stay will be lifted, and he will serve the full two-year suspension.

{¶ 28} Costs are taxed to respondent.

Judgment accordingly.

LUNDBERG STRATTON, O'CONNOR, LANZINGER, and CUPP, JJ., concur.

PFEIFER and O'DONNELL, JJ., would suspend respondent from the practice of law in Ohio for two years but would stay 18 months of the suspension.

BROWN, C.J., not participating.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Karen H. Osmond, Staff Attorney, for relator.

_____