[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Simmons,* Slip Opinion No. 2019-Ohio-3783.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-3783

DISCIPLINARY COUNSEL *v.* SIMMONS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Simmons,* Slip Opinion No. 2019-Ohio-3783.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including failing to cooperate with a disciplinary investigation—Violation of the Rules for the Government of the Bar—Conditionally stayed two-year suspension.*

(No. 2018-1760—Submitted May 8, 2019—Decided September 24, 2019.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2018-013.

_____

**Per Curiam.**

{¶ 1} Respondent, Frank James Simmons Jr., of Toledo, Ohio, Attorney Registration No. 0058498, was admitted to the practice of law in Ohio in 1992.

**{¶ 2}** We suspended his license to practice law for about seven months beginning in 2005 and about eight months beginning in 2009 after he failed to timely register as an attorney for those years. *In re Attorney Registration Suspension of Simmons*, 107 Ohio St.3d 1431, 2005-Ohio-6408, 838 N.E.2d 671; *In re Attorney Registration Suspension of Simmons*, 123 Ohio St.3d 1475, 2009-Ohio-5786, 915 N.E.2d 1256. In 2008, we suspended him for one year, with six months of the suspension conditionally stayed, for representing two clients in Michigan courts, even though he was not licensed in Michigan and his Ohio license was under suspension. He also falsely represented to those courts that he was affiliated with a Michigan lawyer. *See Disciplinary Counsel v. Simmons*, 120 Ohio St.3d 304, 2008-Ohio-6142, 898 N.E.2d 943. We reinstated him to the practice of law on June 28, 2010. *Disciplinary Counsel v. Simmons*, 126 Ohio St.3d 1207, 2010-Ohio-3398, 930 N.E.2d 324.

**{¶ 3}** In March 2018, relator, disciplinary counsel, charged Simmons with misusing his client trust account and failing to cooperate in the ensuing disciplinary investigation. Simmons stipulated to the charges against him, and the matter proceeded to a hearing before a three-member panel of the Board of Professional Conduct. The board issued a report finding that Simmons engaged in the stipulated misconduct and recommending that we impose a two-year suspension, stayed in its entirety on several conditions. No one objected to the board's report.

**{¶ 4}** Based on our review of the record, we adopt the board's findings of misconduct and recommended sanction.

**Misconduct**

**{¶ 5}** Simmons is a solo practitioner with approximately 80 percent of his practice dedicated to criminal-defense work, mostly minor criminal and traffic matters. At his disciplinary hearing, he testified that many of his clients have little or no funds and that many clients pay him at the time of or after their court hearing.

**{¶ 6}** Simmons stipulated that between July 2016 and April 2017, he used his client trust account as a personal and law-firm operating account and commingled personal, business, and client funds in the account. For example, he made payments from his client trust account for personal and business expenses—such as office rent, an automobile loan, and cell-phone service—and frequently withdrew cash from the account.

**{¶ 7}** In November 2016, Simmons's bank notified relator that Simmons had overdrawn his client trust account. In December 2016, Simmons overdrew the account again. On December 21, 2016, relator sent Simmons a letter requesting that he explain the initial overdraft and provide individual client ledgers for clients with funds in the account. In February 2017, Simmons submitted a response explaining the circumstances that led to the two overdrafts, but he failed to submit any client ledgers.

**{¶ 8}** On April 5, 2017, relator sent Simmons a second letter requesting additional information based on a review of the documents that relator had obtained directly from Simmons's bank. Relator again requested that Simmons provide client ledgers. Although relator required Simmons to reply by April 19, 2017, he failed to do so, and relator sent a follow-up letter on April 25, 2017.

**{¶ 9}** On June 8, 2017, relator received a letter from Simmons that addressed many of relator's additional questions. Simmons also pledged to supplement his response with client ledgers. Not having received the ledgers by June 26, 2017, relator sent a follow-up letter to Simmons's counsel. Simmons replied to the letter but failed to enclose the client ledgers. On July 21, 2017, relator again notified Simmons's counsel that relator had not yet received the requested documents. On October 30, 2017, relator sent Simmons's counsel a final letter stating that despite relator's repeated requests, Simmons had not yet provided the client ledgers. Relator also expressed concern that Simmons lacked a "fundamental understanding of his obligations regarding how he is to handle [his client trust]

account" and requested a meeting to discuss the matter. But neither Simmons nor his counsel replied. On November 2, 2017, relator learned of another overdraft in Simmons's client trust account.

{¶ 10} Based on this conduct, the parties stipulated and the board found that Simmons violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold the property of clients in an interest-bearing client trust account, separate from the lawyer's own property), Prof.Cond.R. 1.15(a)(2) (requiring a lawyer to maintain a record for each client on whose behalf funds are held), and Prof.Cond.R. 8.1(b) and Gov.Bar R. V(9)(G) (both requiring a lawyer to cooperate with a disciplinary investigation).

{¶ 11} We agree with the board's findings of misconduct.

**Sanction**

{¶ 12} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 13} As an aggravating factor, the board noted Simmons's prior disciplinary record. *See* Gov.Bar R. V(13)(B)(1). In mitigation, the board found that Simmons lacked a selfish motive and displayed a cooperative attitude toward the disciplinary process *after* relator filed the complaint. *See* Gov.Bar R. V(13)(C)(2) and (4). The board also noted that Simmons expressed genuine remorse for his misconduct and that he had begun working with an attorney to help organize his practice and develop a more formal procedure for fee arrangements with clients, some of whom simply retained him in courthouse hallways.

{¶ 14} To support its recommended sanction, the board primarily relied on *Disciplinary Counsel v. Turner*, 140 Ohio St.3d 109, 2014-Ohio-3158, 15 N.E.3d 851. Turner deposited personal funds into his client trust account, used the account for personal and business expenses, and failed to cooperate in the ensuing disciplinary investigation. Turner also had prior disciplinary offenses, including

two attorney-registration suspensions and one stayed six-month suspension. Mitigating factors included an absence of a selfish or dishonest motive and cooperation in the disciplinary process after relator had filed the disciplinary complaint. In addition, we noted that Turner did not actually have client funds in his trust account—all the funds in Turner's client trust account were his own money; therefore, there was no evidence that he had commingled personal funds with client funds. We suspended Turner for two years but stayed the entire suspension on the condition that he engage in no further misconduct.

{¶ 15} The board concluded that Simmons's misconduct and the mitigating and aggravating factors here are comparable to those in *Turner* and that although Simmons commingled client and personal funds in his client trust account, no clients were actually harmed by his actions. As in *Turner*, the board here recommended a conditionally stayed two-year suspension, finding no threat to the public in allowing Simmons to continue practicing law. The board also recommended, however, that we condition the stay of Simmons's suspension on his completing certain continuing-legal-education ("CLE") courses and submitting to a one-year term of monitored probation. Probation is necessary, the board concluded, to ensure Simmons's continued compliance with the professional-conduct rules regulating client trust accounts and to ensure that he "goes forward with his plans of better client and law office organization and client management."

{¶ 16} We agree that a two-year suspension, all stayed on the conditions recommended by the board, is the appropriate sanction in this case. Simmons's misconduct and the aggravating and mitigating factors here are similar to those in *Turner*, and therefore, a similar sanction is warranted. In addition, the board's recommended conditions are properly tailored to address the causes of Simmons's misconduct. *See Allen Cty. Bar Assn. v. Brown*, 124 Ohio St.3d 530, 2010-Ohio-580, 925 N.E.2d 112, ¶ 16 (noting that we "tailor[] the conditions of stayed

suspension to address the causes of misconduct"). We therefore adopt the board's recommended sanction.

**Conclusion**

{¶ 17} For the reasons explained above, Frank James Simmons Jr. is suspended from the practice of law in Ohio for two years, with the entire suspension stayed on the conditions that he (1) complete a minimum of three hours of CLE focused on client-trust-account management and a minimum of three hours of CLE focused on law-office management, in addition to the CLE requirements of Gov.Bar R. X, (2) serve a one-year term of monitored probation pursuant to Gov.Bar R. V(21) during the first year of his stayed suspension, (3) refrain from further misconduct, and (4) pay the costs of this proceeding. If Simmons fails to comply with any of these conditions, the stay will be lifted and he will serve the entire two-year suspension. Costs are taxed to Simmons.

Judgment accordingly.

O'CONNOR, C.J., and FRENCH, FISCHER, DONNELLY, and STEWART, JJ., concur.

KENNEDY, J., concurs in part and dissents in part, with an opinion joined by DEWINE, J.

_____

**KENNEDY, J., concurring in part and dissenting in part.**

{¶ 18} I agree with the majority's determination that a fully stayed two-year suspension of respondent, Frank James Simmons Jr., is warranted to protect the public, and I concur in the court's order:

> Frank James Simmons Jr. is suspended from the practice of law in Ohio for two years, with the entire suspension stayed on the conditions that he (1) complete a minimum of three hours of [continuing-legal-education ("CLE") courses] focused on client-

6

trust-account management and a minimum of three hours of CLE focused on law-office management, in addition to the CLE requirements of Gov.Bar R. X, (2) serve a one-year term of monitored probation pursuant to Gov.Bar R. V(21) during the first year of his stayed suspension, (3) refrain from further misconduct, and (4) pay the costs of this proceeding. If Simmons fails to comply with any of these conditions, the stay will be lifted and he will serve the entire two-year suspension. Costs are taxed to Simmons.

Majority opinion at ¶ 17.

{¶ 19} Although I agree that probation is appropriate, I part ways with the majority over its failure to impose additional specific conditions for Simmons to follow during the one-year monitored probationary period. The majority opinion simply orders Simmons to "serve a one-year term of monitored probation pursuant to Gov.Bar R. V(21) during the first year of his stayed suspension." *Id.* Other than ordering that Simmons complete additional hours of CLE, pay the costs of the case, and commit no further misconduct, the majority gives no guidance to Simmons or his monitor regarding their respective duties during the term of monitored probation, thereby failing to promote public confidence that the underlying causes of Simmons's misconduct will be addressed.

{¶ 20} As I explained in *Disciplinary Counsel v. Halligan*, ___ Ohio St.3d ___, 2019-Ohio-3748, ___N.E.3d ___, ¶ 41 (Kennedy, J., concurring in part and dissenting in part), the "failure to attach conditions to probation is more than a missed opportunity to set the criteria and goals for professional redemption, it is an abdication of our duty under the Rules for the Government of the Bar." "[C]onditions are essential to the scheme" of probation established by Gov.Bar R. V(21), *id.* at ¶ 43; "[w]ithout guidance as to the specific conditions of probation— conditions specifically designed by this court to protect the public and rehabilitate

the respondent—a term of monitored probation has little value," *id*. at ¶ 44. For these reasons, "[a] term of probation should have sufficient conditions tied to a respondent's violations to protect the public from further violations of the Rules of Professional Conduct," *id*. at ¶ 45, while also providing supervisory activities "tailored to benefit a respondent," *id*.

{¶ 21} In this case, I would impose the following specific conditions for the one-year term of monitored probation: (1) during the first three months of the term of probation, Simmons shall meet with his monitoring attorney on a monthly basis, then every two months for the remainder of the term of probation; (2) Simmons shall give the monitoring attorney complete access to client files, ledgers, and account statements from his client trust account, and ledgers and account statements from his business account; (3) the monitoring attorney shall review Simmons's client files for fee agreements and identify those clients who have paid Simmons retainers in advance of legal work; (4) the monitoring attorney shall review the ledgers and account statements from Simmons's client trust and business accounts and ensure that client funds are deposited into and disbursed from the client trust account while earned fees are deposited into, and business expenses are paid from, Simmons's business account; and (5) Simmons shall complete the additional CLE hours focused on client-trust-account management and law-office management prior to the termination of probation.

{¶ 22} "An effective attorney-probation system—one that follows the Rules for the Government of the Bar—requires the considered input of this court in establishing the conditions of probation." *Halligan* at ¶ 47 (Kennedy, J., concurring in part and dissenting in part). Because the majority fails to impose sufficient additional conditions of probation, I dissent from that part of the court's decision today.

DEWINE, J., concurs in the foregoing opinion.

_____

Scott J. Drexel, Disciplinary Counsel, and Stacy Solochek Beckman, Assistant Disciplinary Counsel, for relator.

Patricia Horner, for respondent.

_____