**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Daniell*, Slip Opinion No. 2023-Ohio-3383.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-3383

DISCIPLINARY COUNSEL *v*. DANIELL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Daniell*, Slip Opinion No. 2023-Ohio-3383.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Two-year suspension with 18 months conditionally stayed.*

(No. 2023-0468—Submitted May 16, 2023—Decided September 26, 2023.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2022-041.

_____

**Per Curiam.**

{¶ 1} Respondent, Ric Daniell, of Columbus, Ohio, Attorney Registration No. 0032072, was admitted to the practice of law in Ohio in 1978.

{¶ 2} On July 23, 2014, this court imposed a conditionally stayed one-year suspension on Daniell's license for his failure to properly maintain his client trust account and failure to cooperate during the ensuing disciplinary investigation.

*Disciplinary Counsel v. Daniell*, 140 Ohio St.3d 67, 2014-Ohio-3161, 14 N.E.3d 1040.

{¶ 3} In an October 2022 complaint, relator, disciplinary counsel, alleged that Daniell neglected a client's legal matter, failed to reasonably communicate with the client, and failed to maintain the client's advance fee and court costs in his client trust account until the fee was earned and the expenses were incurred. Relator further alleged that Daniell improperly managed his client trust account and failed to cooperate in the resulting disciplinary investigation. The parties submitted stipulations of fact and misconduct, which included 46 exhibits, and the matter proceeded to a hearing before a three-member panel of the Board of Professional Conduct. Based on the parties' stipulations and Daniell's testimony, the panel found that Daniell committed the charged misconduct and recommended that he be suspended from the practice of law for two years with 18 months conditionally stayed. The panel also recommended that certain conditions be placed on Daniell's reinstatement to the practice of law and that upon reinstatement, he be required to serve an 18-month period of monitored probation.

{¶ 4} The board adopted the panel's report and recommendation, and no objections have been filed. We adopt the board's findings of misconduct and the recommended sanction.

## MISCONDUCT

### *Count I—The Camp Adoption*

{¶ 5} In November 2020, Joseph Camp retained Daniell to represent him and his husband, Michael, in their efforts to adopt two children. Camp paid Daniell a $1,000 flat fee plus $140 for a filing fee by separate checks. On the same day that Daniell deposited Camp's $1,000 check into his client trust account, he wrote himself a $1,000 check from that account, even though he had completed only 1.2 hours of work on Camp's behalf.

**{¶ 6}** In December 2020, Daniell filed in the Franklin County Probate Court two adoption petitions along with custody affidavits and affidavits for service by publication on behalf of the Camps. But he failed to file the children's birth certificates, as required. The court scheduled a hearing on the petitions for June 1, 2021.

**{¶ 7}** Other than reviewing the notices by publication, Daniell did not perform any work on the case between the filing of the petitions and June 1. In late April, Camp emailed Daniell to inform him that he had been unable to obtain copies of the children's birth certificates. Over the next several weeks, Camp emailed Daniell several times with questions about the June 1 hearing and other matters related to his case. When Camp did not receive any response, he sent several emails expressing concern for Daniell's welfare and requesting information about the case. Daniell did not respond until May 26, when he told Camp to bring the children to his office for the June 1 hearing, which would be held remotely.

**{¶ 8}** Just a few days before the scheduled hearing, Daniell emailed Camp to tell him that the hearing needed to be postponed, without disclosing that it would be converted into a pretrial conference. He informed Camp that there were "some jobs and family services forms that first need to be completed" and that he would get those forms to Camp "in the immediate future." He also indicated that the Camps would need to be fingerprinted for a background check. Despite those representations, Daniell failed to send the Camps the required paperwork. Camp later emailed Daniell to inform him that he had been fingerprinted and to ask when he could expect to receive the forms. On July 6, after Daniell failed to respond to that email and three others, Camp sent an email terminating Daniell's representation. Camp also requested a copy of his file, an itemized billing statement, and a refund of any unearned fees.

**{¶ 9}** Camp retained new counsel, who emailed Daniell to request the Camps' case file. Daniell delivered the file to the new attorney, but the new

attorney noted that several documents that were required to proceed with the final hearing were missing. Daniell stipulated that he failed to obtain several required documents, including a home-study report, Bureau of Criminal Investigation reports, medical statements, letters of reference, the children's birth certificates, and vital-statistics forms for the issuance of new birth certificates. After Camp's new counsel filed a notice of appearance, the adoption case was continued several times to allow the Camps to complete the home-study process. Although the parties have stipulated that the adoption remained pending at the time of Daniell's hearing, Daniell testified that Camp is no longer pursuing adoption and instead has retained him to pursue name changes for the children.

{¶ 10} Despite Camp's multiple requests, Daniell never gave Camp an itemized bill. He did, however, submit to relator an itemized bill showing that he had performed just 5.2 hours of work in the Camp case.

{¶ 11} The parties stipulated—and the board found that clear and convincing evidence confirmed—that Daniell's conduct violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed about the status of a matter), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with a client's reasonable requests for information), and 1.15(c) (requiring a lawyer to deposit advance legal fees and expenses into a client trust account, to be withdrawn by the lawyer only as fees are earned or expenses incurred).

{¶ 12} The board also found that Daniell's conduct violated two additional rules charged in the complaint. Specifically, the board found that Daniell violated Prof.Cond.R. 1.4(a)(2) (requiring a lawyer to reasonably consult with a client about the means by which the client's objectives are to be accomplished) by failing to timely send Camp forms that were required for the adoption case to proceed and failing to instruct him regarding how to correctly complete those forms despite Camp's emails expressing concern that he did not know how to proceed. The board

also found that Daniell violated Prof.Cond.R. 1.15(d) (requiring a lawyer to promptly deliver funds or other property that the client is entitled to receive) by failing to provide Camp with an itemized statement, despite his admission before the panel that he was aware of one of Camp's emails requesting an itemized statement.

{¶ 13} We adopt the board's findings of misconduct as described above.

### Count II—Client-Trust-Account Violations

{¶ 14} In March 2020, Daniell opened a client trust account with a debit card linked to it and deposited $200 into the account. The parties stipulated that Daniell regularly commingled personal and client funds in the account. For example, in October 2020 and October 2021, Daniell deposited his personal credit-card reward checks into his client trust account. During his testimony before the panel, he admitted that he used his client trust account as his own personal checking account. The parties stipulated that from May 2020 through June 2022, Daniell made more than 100 personal payments or withdrawals totaling more than $5,500 from his client trust account, including payments to the United States Postal Service, Staples, Amazon Digital, Comfort Inns, a veterinarian, restaurants, and a glass-repair company. Because Daniell had failed to give relator any documentation regarding his client trust account, however, relator was unable to ascertain the source of the funds (i.e., unearned client funds, earned fees, or personal funds deposited into the account) that Daniell used for those personal withdrawals and payments.

{¶ 15} The parties stipulated—and the board found that clear and convincing evidence confirmed—that Daniell's conduct violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold the property of clients in an interest-bearing client trust account, separately from the lawyer's own property), and 1.15(b) (permitting a lawyer to deposit his or her own funds into a client trust account for

the sole purpose of paying or obtaining a waiver of bank service charges). We adopt these findings of misconduct.

### *Count III—Failure to Cooperate*

{¶ 16} On February 23, 2022, relator sent a letter of inquiry to Daniell using the email address he had registered with this court's Office of Attorney Services. In that letter, relator sought information about Daniell's representation of Camp. Approximately three weeks later, Daniell submitted his response, but he failed to answer relator's questions regarding his fee arrangement and his failures to respond to Camp's emails. Over the next several weeks, relator sent Daniell two additional emails and left him a voicemail message, but Daniell did not respond to any of those communications. Nor did he respond to another letter delivered by email and by certified mail in which relator cautioned him that his failure to timely respond would be considered a failure to cooperate in a disciplinary investigation.

{¶ 17} In May 2022, relator sent Daniell a letter and subpoena ordering him to appear for a deposition on June 9, 2022. Although the subpoena was served by certified mail at Daniell's office, he failed to appear for that deposition and one other scheduled by relator. Another letter of inquiry emailed to Daniell in August 2022 also went unanswered.

{¶ 18} During the panel hearing, Daniell admitted he had known that relator was investigating him and that he was "pretty sure" that the emails relator had sent to him reached him but that he did not think he had read them all. Although Daniell did not stipulate that he failed to cooperate in the disciplinary investigation, the board found that his conduct violated Prof.Cond.R. 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation). We adopt that finding of misconduct.

### **RECOMMENDED SANCTION**

{¶ 19} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the

aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 20} The parties have stipulated that Daniell's prior discipline and multiple offenses are aggravating factors in this case. *See* Gov.Bar R. V(13)(B)(1) and (4). The board adopted those aggravating factors and noted that Daniell's misconduct in this case is substantially similar to his misconduct in his previous disciplinary case—which weighs in favor of a more severe sanction because the prior sanction failed to serve the desired deterrent effect. *See, e.g.*, *Lorain Cty. Bar Assn. v. Nelson*, 168 Ohio St.3d 596, 2022-Ohio-1288, 200 N.E.3d 1039, ¶ 36. The board also found that Daniell failed to cooperate in the disciplinary process before the complaint was certified and did not begin to cooperate until the hearing date approached. *See* Gov.Bar R. V(13)(B)(5).

{¶ 21} As for mitigating factors, the parties stipulated that Daniell had lacked a dishonest or selfish motive and presented evidence of his good character and reputation. *See* Gov.Bar R. V(13)(C)(2) and (5). However, the board accorded limited weight to the character evidence because the letters are all from current or former clients, they have a similar format, and Daniell admitted that they all had been drafted in his office. In addition, the board found that Daniell was eventually forthcoming and cooperative in the disciplinary proceeding, *see* Gov.Bar R. V(13)(C)(4), and had expressed remorse for his conduct. Although it is not a mitigating factor, the board noted that Daniell's practice focused mostly on people who " 'don't have a lot of financial wherewithal,' " that he began providing pro bono legal assistance in the local eviction court during the COVID-19 pandemic, and that he intends to continue providing those services in the future.

{¶ 22} In determining the appropriate sanction for Daniell's misconduct, the board started with the presumption that the neglect of client matters combined with a failure to cooperate in a disciplinary investigation warrants an indefinite suspension from the practice of law. *See, e.g.*, *Disciplinary Counsel v. Ford*, 133

Ohio St.3d 105, 2012-Ohio-3915, 976 N.E.2d 846, ¶ 24. However, each disciplinary case is unique, and Gov.Bar R. V(13)(A) directs that the board consider "all relevant factors" in determining what sanction to recommend. The board noted that we have deviated from this presumption of an indefinite suspension when warranted—for example, when the respondent's conduct had affected just one client, *see Cuyahoga Cty. Bar Assn. v. Paulson*, 111 Ohio St.3d 415, 2006-Ohio-5859, 856 N.E.2d 970, ¶ 12, and when the misconduct, while serious, did not involve dishonesty and had not resulted in irreparable harm to clients, *see Stark Cty. Bar Assn. v. Marosan*, 106 Ohio St.3d 430, 2005-Ohio-5412, 835 N.E.2d 718, ¶ 24.

{¶ 23} Relator recommended that Daniell be suspended for two years, that the entire suspension be stayed on conditions, and that during the stay, he be on monitored probation, with the monitoring focused on client-trust-account management. In support of that recommendation, relator cited three cases in which we imposed fully or partially stayed two-year suspensions for similar acts of misconduct—*Disciplinary Counsel v. Simmons*, 157 Ohio St.3d 519, 2019-Ohio-3783, 138 N.E.3d 1128; *Disciplinary Counsel v. Turner*, 140 Ohio St.3d 109, 2014-Ohio-3158, 15 N.E.3d 851; and *Disciplinary Counsel v. Engel*, 154 Ohio St.3d 209, 2018-Ohio-2988, 113 N.E.3d 481. Having examined those cases, the board recommends that we suspend Daniell for two years with 18 months stayed on the conditions that he make restitution to Camp and pay the costs of this matter, that additional conditions be imposed on his reinstatement to the practice of law, and that upon his reinstatement, he serve a period of monitored probation.

{¶ 24} In *Simmons* and *Turner*, we imposed conditionally stayed two-year suspensions on attorneys who, like Daniell, had used their client trust accounts to pay their own personal and business expenses and failed to cooperate in the resulting disciplinary investigations. But neither of those attorneys had neglected a client's legal matter, as Daniell did here.

{¶ 25} Simmons and Turner had prior disciplinary histories that were more extensive than Daniell's. Simmons had twice been suspended for attorney-registration violations and had also been suspended for one year, with six months conditionally stayed, for engaging in the unauthorized practice of law and making false representations to courts in another state. *Simmons* at ¶ 2, 13. Similarly, Turner had a history of two continuing-legal-education ("CLE") suspensions, an attorney-registration suspension, and a conditionally stayed six-month suspension for three instances of neglect and for his failure to deposit client funds into his client trust account. *Turner* at ¶ 2, 16. Several mitigating factors present in this case were found in *Simmons* and *Turner*. None of the three attorneys acted with a selfish or dishonest motive, and all eventually cooperated in the disciplinary proceedings against them. *Simmons* at ¶ 13; *Turner* at ¶ 16. Simmons also expressed genuine remorse for his misconduct, and Turner submitted evidence of his good character and his community involvement. *Simmons* at ¶ 13; *Turner* at ¶ 16.

{¶ 26} We imposed conditionally stayed two-year suspensions on Simmons and Turner for using their client trust accounts as personal checking accounts and failing to cooperate in the resulting disciplinary investigations. *Simmons*, 157 Ohio St.3d 519, 2019-Ohio-3783, 138 N.E.3d 1128, at ¶ 17; *Turner*, 140 Ohio St.3d 109, 2014-Ohio-3158, 15 N.E.3d 851, at ¶ 19. We fully stayed Turner's suspension in part because his client trust account did not actually contain any client funds when he misused it. *See Turner* at ¶ 18. But here, in addition to commingling personal and client funds, Daniell neglected Camp's legal matter, failed to reasonably communicate with him, and failed to promptly refund the unearned portion of his fee. And in the words of the board, Daniell's neglect "caused much distress to Camp while the adoptions were pending"—though the board acknowledged that the neglect did not cause any lasting harm.

{¶ 27} In *Simmons*, we fully stayed the suspension in part because of the board's finding that the attorney's continued practice of law posed no threat to the

public. *See Simmons* at ¶ 15. In this case, however, the board expressed concern that Daniell may be suffering from a mental-health issue that could affect his ability to competently practice law going forward. The board noted that in his previous disciplinary case, Daniell established his depression stemming from his wife's sudden death as a mitigating factor—though he did not attempt to establish any disorder as a mitigating factor in this case. *See Daniell*, 140 Ohio St.3d 67, 2014-Ohio-3161, 14 N.E.3d 1040, at ¶ 13 (determining that Daniell's "multiple depression-related disorders resulting from his wife's death" qualified as a mitigating disorder); Gov.Bar R. VII(13)(C)(7). Citing Daniell's testimony about his isolation and difficulty functioning during the COVID-19 pandemic, his admission that he had not read all the emails that he received from Camp and relator, and his candid acknowledgment that he "might have been a little depressed during that period," the board suggested that Daniell might still suffer from depression. During his testimony about those difficulties, Daniell agreed to submit to a mental-health assessment conducted by the Ohio Lawyers Assistance Program ("OLAP") or his personal physician.

{¶ 28} The board also expressed concern that Daniell did not have a local support system or a solid plan to handle his client trust account moving forward. In fact, Daniell testified that he lives alone with his dog, that his adult children live on opposite sides of the country, and that he had no relationship with any attorney who could assist him in covering hearings if the need arose. Moreover, the bookkeeper who had managed Daniell's client trust account after his first disciplinary case had passed away from COVID-19, and Daniell explained that he had not hired a replacement because he "just gave up." Although Daniell testified that he might "just do away with" his client trust account, upon further questioning, he acknowledged that he could not actually do so and suggested that he could hire someone to help him comply with the rules governing client trust accounts.

{¶ 29} Although the facts of *Engel*, 154 Ohio St.3d 209, 2018-Ohio-2988, 113 N.E.3d 481, are not directly on point, the board nonetheless found the case to be instructive. Like Daniell, Engel neglected one client's legal matter, failed to reasonably communicate with the client, failed to promptly refund the unearned fee upon the termination of the representation, and failed to cooperate in the resulting disciplinary investigation—but he did not commit any trust-account violations. *See id.* at ¶ 6-8. The aggravating factors in *Engel* are identical to those of this case, except that Engel had *twice* been disciplined for the same type of misconduct. *Id.* at ¶ 2, 16. The mitigating factors found in *Engel* are similar to those we have found in this case, with the most striking difference being that Engel had presented evidence of two mitigating mental disorders, while in this case there is only a general concern that Daniell's previously diagnosed depression persists. *Id.* at ¶ 11; *see also* Gov.Bar R. V(13)(C)(7).

{¶ 30} Over Engel's objection, we suspended him from the practice of law for two years with 18 months stayed on the condition that he commit no further misconduct. *Engel* at ¶ 17, 31. We conditioned Engel's reinstatement on the submission of proof of his continued compliance with his existing OLAP contract, the recommendations of his mental-health professional, and Engel's adherence to the recommendations of his primary-care physician. *Id.* at ¶ 32. We emphasized that Engel's prior discipline for similar acts of misconduct and his initial failure to cooperate in the disciplinary process warranted a brief actual suspension from the practice of law followed by a longer stayed suspension with monitoring to protect the public and preserve public trust in the legal profession. *Id.* at ¶ 27-30.

{¶ 31} Based on Daniell's prior discipline for substantially similar misconduct and the striking similarities between this case and *Engel*, the board recommends that Daniell be suspended from the practice of law for two years with 18 months stayed on the conditions that he make restitution to Camp within 60 days and pay the costs of this proceeding.

**{¶ 32}** In addition, the board recommends that as conditions of his reinstatement, Daniell be required to prove that he has (1) completed a minimum of three hours of CLE focused on law-office management in addition to the requirements of Gov.Bar R. X, (2) submitted to an evaluation conducted by OLAP or a qualified healthcare professional of Daniell's choice, and (3) complied with all treatment recommendations arising from that evaluation to ensure that any mental-health concerns have been addressed. The board further recommends that upon reinstatement, Daniell be required to serve an 18-month period of monitored probation with a monitoring attorney designated by relator, that he be required to meet with the monitoring attorney monthly for the first six months and then once every three months thereafter, and that he be required to provide the monitoring attorney complete access to his client trust account and business accounts, including but not limited to monthly bank statements, journals, and ledgers that he is required to maintain pursuant to Prof.Cond.R. 1.15.

**{¶ 33}** Having thoroughly reviewed the record and our precedent and in light of the board's significant concerns about the current state of Daniell's mental health, we agree that the sanction recommended by the board is necessary and appropriate to protect the public from further misconduct.

## CONCLUSION

**{¶ 34}** Accordingly, Ric Daniell is hereby suspended from the practice of law in Ohio for two years with 18 months stayed on the conditions that (1) within 60 days, he make restitution of $500 to Joseph Camp less the amount of any filing fees that Daniell proves he has paid on Camp's behalf, (2) he pay the costs of these proceedings, and (3) he commit no further misconduct. If Daniell fails to comply with a condition of the stay, the stay will be revoked and he will be required to serve the full two-year suspension.

**{¶ 35}** In addition to the requirements of Gov.Bar R. V(24), Daniell's reinstatement to the practice of law shall be conditioned on the submission of proof

that he has (1) completed a minimum of three hours of CLE focused on law-office management in addition to the requirements of Gov.Bar R. X, (2) submitted to an evaluation by OLAP or a qualified healthcare professional of Daniell's choice, and (3) complied with all treatment recommendations arising from that evaluation.

{¶ 36} Upon reinstatement, Daniell shall serve an 18-month period of monitored probation, with a monitoring attorney designated by relator. He shall be required to meet with the monitoring attorney monthly for the first six months and then once every three months thereafter and to provide the monitoring attorney complete access to his client trust account and business accounts, including but not limited to monthly bank statements, journals, and ledgers that he is required to maintain pursuant to Prof.Cond.R. 1.15. Costs are taxed to Daniell.

Judgment accordingly.

KENNEDY, C.J., and DEWINE, DONNELLY, STEWART, and DETERS, JJ., concur.

FISCHER and BRUNNER, JJ., concur in part and dissent in part and would impose the sanction initially recommended by relator: a fully stayed two-year suspension with probation and monitoring.

_____

Joseph M. Caligiuri, Disciplinary Counsel, for relator.

Rick Daniell, pro se.

_____