**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. VanBibber*, **Slip Opinion No. 2026-Ohio-1271.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-1271

DISCIPLINARY COUNSEL *v.* VANBIBBER.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. VanBibber*, Slip Opinion No. 2026-Ohio-1271.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including knowingly failing to respond to a demand for information by a disciplinary authority during an investigation—Two-year suspension.*

(No. 2025-1640—Submitted February 10, 2026—Decided April 10, 2026.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2024-038.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, DETERS, HAWKINS, and SHANAHAN, JJ. BRUNNER, J., did not participate.

**Per Curiam.**

{¶ 1} Respondent, Jack Herchel VanBibber, of Marion, Ohio, Attorney Registration No. 0097242, was admitted to the practice of law in Ohio in 2018. On

May 7, 2024, we suspended VanBibber from the practice of law for two years, with the entire suspension stayed on conditions, after finding that he failed to comply with multiple traffic laws, made false statements to law-enforcement officers during traffic stops, failed to abide by multiple court orders related to his traffic violations, mismanaged his client trust account, and failed to cooperate in the resulting disciplinary investigation. *Disciplinary Counsel v. VanBibber*, 2024-Ohio-1702.

{¶ 2} In a four-count amended complaint filed on May 15, 2025, while VanBibber was serving the stayed suspension imposed in May 2024, relator, disciplinary counsel, charged him with multiple violations of the Rules of Professional Conduct arising from his neglect of a client's legal matter, making false statements to a tribunal, propositioning a client's significant other for sex, and failure to cooperate in the resulting disciplinary investigation. The parties entered into comprehensive stipulations of fact, misconduct, and aggravating factors with respect to three of the four counts and submitted 112 stipulated exhibits. Count Three of the amended complaint was dismissed on relator's motion.

{¶ 3} Thereafter, a three-member panel of the Board of Professional Conduct held a hearing at which VanBibber was the only witness to testify. Following the hearing, the panel issued a report in which it made findings of fact and found that VanBibber committed the misconduct charged in the three remaining counts. After considering that misconduct, the relevant aggravating and mitigating factors, and our applicable precedent, the panel recommended that VanBibber be suspended from the practice of law for two years. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction and further recommended that VanBibber be ordered to pay the costs of these proceedings. No objections have been filed.

{¶ 4} For the reasons that follow, we adopt the board's findings of misconduct and recommended sanction. Accordingly, we suspend VanBibber from the practice of law for two years and order him to pay the costs of these proceedings.

**FACTS AND MISCONDUCT**

***Count One: The* Casto *Matter***

{¶ 5} On July 11, 2023, VanBibber entered a notice of appearance on behalf of Matthew Casto in a postdivorce child-custody case that was pending in the Fairfield County Court of Common Pleas, Domestic Relations Division. *See Casto v. Casto*, Fairfield C.P. No. 2021 DR 00195. Approximately four months before VanBibber entered his appearance, a settlement conference was scheduled for July 25 and a bench trial for August 31, both at 9:30 a.m. On June 30, however, in a custody proceeding pending in the Marion County Court of Common Pleas, Family Division, in which he was representing the plaintiff, VanBibber advised the court that he would be available for a final hearing at 9:00 a.m. on August 31. *See Schmelzer v. Hodges*, Marion C.P. Nos. 2018 PC 00077 and 00078. When he entered his appearance in the *Casto* case, VanBibber knew that he was scheduled to appear simultaneously in *Casto* and in *Schmelzer*, in two county courthouses that are located approximately 80 miles apart.

{¶ 6} Three days later, on July 14, VanBibber's assistant contacted the Fairfield County court to inquire about the possibility of VanBibber's appearing via Zoom on July 25 and August 31 in *Casto*. A judicial administrative assistant responded to the inquiry by email, stating, "You would need to file a motion to request to appear by [Z]oom for any hearing dates."

{¶ 7} VanBibber did not file a motion requesting to appear for the July 25 settlement conference by Zoom, nor did he advise Casto to appear at the conference. And on July 25, both VanBibber and Casto failed—without explanation—to appear for the conference, which Casto's ex-wife had traveled from her residence in Florida to attend. While Casto's ex-wife, her counsel, and the children's guardian

ad litem waited, the magistrate called VanBibber's office to ascertain his whereabouts. VanBibber's assistant answered but offered no information, and VanBibber did not return the magistrate's call until after the conference had concluded.

{¶ 8} Thereafter, Casto's former mother-in-law was joined as a party and filed a motion for emergency temporary custody of the children. In addition, Casto's ex-wife's counsel filed a motion for attorney fees and expenses for Casto and VanBibber's failure to appear for the settlement conference.

{¶ 9} VanBibber did appear with Casto for an emergency custody hearing on August 8. During that hearing, VanBibber falsely advised the magistrate that the reason for his failure to appear for the settlement conference was that a court staffer had told his assistant that he could appear by phone or Zoom and that the court would send a Zoom link. VanBibber also falsely stated that at the time the magistrate was attempting to convene the settlement conference, he was at a Marion County hearing that was running late. In the course of this disciplinary proceeding, however, VanBibber has stated that the reason he failed to appear for the settlement conference was that he was either at a meeting with a prospective client that was running late or was on his way to the Marion County courthouse for a hearing.

{¶ 10} Before concluding the August 8 hearing, the magistrate asked whether there was anything else that the parties wanted to address. Casto's ex-wife's counsel noted that his client's motion for attorney fees and expenses was scheduled to be heard the following day. VanBibber stated that he had intended to file a response to the motion but had not yet done so and that he would explain his opposition to the motion in his response. The magistrate suggested that the parties attempt to resolve the matter, reminding VanBibber that he had failed to appear for the settlement conference without filing a motion to continue and that Casto's ex-wife had incurred legal fees in connection with the scheduled conference.

{¶ 11} VanBibber did not file a response to the motion for legal fees and expenses or otherwise attempt to resolve the matter. On August 18, the magistrate granted the motion as to the legal fees and ordered Casto to pay his ex-wife $800 by 4:00 p.m. on August 28. VanBibber failed to inform Casto of the order for several weeks but ultimately paid the fees in April 2024, after confirming with relator that it was permissible for him to do so.

{¶ 12} Although VanBibber was aware on July 11, when he entered his appearance in *Casto*, that he was double-booked for the morning of August 31, he waited until August 9 to request a continuance of the *Casto* trial. The Fairfield County court denied VanBibber's motion the day it was filed, noting that the *Casto* trial was scheduled almost four months before VanBibber entered his appearance in the case. Although the court also called VanBibber that day to inform him that his motion had been denied, VanBibber waited until August 24 to seek a continuance of the *Schmelzer* hearing. The Marion County court denied that motion on August 29.

{¶ 13} On August 30, VanBibber filed second motions for a continuance in both *Casto* and *Schmelzer*. In the *Casto* motion, he stated, "[T]he hearing scheduled to take place on Thursday, August 31, 2023 at 9:30 a.m. in *Casto vs. Casto* is required to be continued as it was scheduled after the *Schmelzer vs. Hodges* matter." That assertion was false because the *Casto* trial was scheduled on March 17 and the *Schmelzer* final hearing was scheduled on June 30. Although counsel for Casto's former mother-in-law opposed the motion, noting VanBibber's false statement and that Casto's ex-wife had already arranged to travel from Florida to attend the trial, VanBibber made no effort to correct his false statement. In his second motion to continue the *Schmelzer* hearing, VanBibber correctly stated that the *Casto* trial was scheduled before the *Schmelzer* hearing was scheduled. Both motions were denied.

5

{¶ 14} Shortly after VanBibber filed the second motion for a continuance in *Casto*, the guardian ad litem emailed the parties, offering to conduct a phone conference in an effort to resolve the case. Counsel for Casto's former mother-in-law responded, stating that her client intended to seek full custody of the children, and Casto's ex-wife's counsel responded that his client was in agreement. But VanBibber did not respond.

{¶ 15} Later on August 30, VanBibber realized that one of the tires on his car had low pressure. He took the car to a repair shop and was advised that he should replace all four tires but that the shop could not obtain the appropriate tires until the following day—when he was scheduled to appear in court in both *Casto* and *Schmelzer*. The next day, VanBibber walked to court to attend the *Schmelzer* hearing and filed a motion to appear for the *Casto* trial by phone or Zoom, explaining his car troubles and stating that he did not have a "backup method of transportation." The motion was denied, and while all other parties were present with their counsel, neither VanBibber nor Casto appeared for the trial. The trial was ultimately continued until January 2, 2024.

{¶ 16} VanBibber had limited communication with counsel for the other parties between the two trial dates. After issuing initial discovery requests to Casto's ex-wife and former mother-in-law, VanBibber failed to respond to inquiries from the guardian ad litem and counsel for Casto's former mother-in-law about the possible resolution of the case. Although the parties were unsure of Casto's position on the issue of custody when they arrived at the courthouse on January 2, they were able to settle the case without a trial.

{¶ 17} The parties stipulated and the board found by clear and convincing evidence that VanBibber's conduct with respect to the *Casto* matter violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal), and 8.4(d) (prohibiting a lawyer from

engaging in conduct that is prejudicial to the administration of justice). We adopt those findings of misconduct.

### Count Two: Failure to Cooperate and False Statements to Relator

{¶ 18} On September 12, 2023, after receiving various documents from the magistrate regarding VanBibber's conduct in the *Casto* matter, relator sent a letter inquiring about that conduct to the attorney representing VanBibber in his first disciplinary case, which was then pending before this court. In response, counsel informed relator that VanBibber would handle the new letter of inquiry himself. After receiving a one-week extension, VanBibber submitted a response on October 3.

{¶ 19} On February 13, 2024, relator requested additional information from VanBibber about his conduct in *Casto* by February 27. VanBibber acknowledged receipt of the request the next day, but on the day his response was due, he asked for and received a two-week extension. He did not, however, provide the requested information, and he failed to respond to an email relator sent the following week to inquire about the status of his response to relator's February 13 request. On April 1, relator sent VanBibber a letter documenting his failure to respond to the request, granting him an additional week to respond, and informing him that no further extensions would be granted. Again, VanBibber failed to respond.

{¶ 20} On April 16, after the deadline, relator called VanBibber's office, informing his assistant of VanBibber's failure to cooperate with the disciplinary investigation and seeking an explanation. Later that day, VanBibber's assistant sent an email responding to one of relator's inquiries and VanBibber sent a letter responding to other inquiries. In his letter, VanBibber falsely stated that the reason he did not prepare a motion to continue the *Casto* settlement conference scheduled for July 25, 2023, was that a member of his staff had informed him that "the Court advised [he] would be able to appear via telephone and/or [Z]oom." But as noted

above in the discussion of Count One, VanBibber's assistant was informed that the court would require a motion to appear via Zoom, which VanBibber failed to file.

{¶ 21} In June 2024, relator sent VanBibber a letter informing him that relator had subpoenaed VanBibber's operating-account records from his bank and that after reviewing the records, relator had questions about some of his transactions. Relator instructed VanBibber to provide his response answering the questions within three weeks. After the deadline passed, VanBibber's assistant contacted relator to request an extension and relator gave VanBibber an additional week to respond. VanBibber ultimately submitted an incomplete response, claiming that the client files in question were in storage and that his bank had not yet provided the documents that he had requested. Relator twice emailed VanBibber to request additional information but received no further response.

{¶ 22} VanBibber was deposed on August 30, 2024, but he did not provide any of the documents that relator had requested. Once again, VanBibber claimed that his bank had failed to provide the records he had requested, though he was unable to specify when he had made the request. Relator therefore offered to give VanBibber copies of the bank records and transmitted them later that day. Having testified during his deposition that he would respond quickly to relator's June 2024 letter once he had the records, VanBibber never adequately responded to the letter.

{¶ 23} The parties stipulated and the board found by clear and convincing evidence that VanBibber's conduct with respect to relator violated Prof.Cond.R. 8.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact in connection with a disciplinary matter) and 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation). We adopt these findings of misconduct.

### Count Four: Sexual Advances Toward J.H.

{¶ 24} In March 2024, Joshua Miller retained VanBibber to represent him in a child-support-modification case involving Miller's two minor children. At that

time, Miller was in a relationship with J.H., who knew VanBibber from a prior matter and had recommended him to Miller. J.H. attended the meeting where Miller retained VanBibber, and she paid a portion of the fee. A few days later, J.H. went to VanBibber's office to drop off paperwork and pay the remainder of his fee.

{¶ 25} On April 9, VanBibber sent J.H. a message through the Snapchat app, asking whether she was single. J.H. replied that she was dating Miller and asked about VanBibber's relationship status. VanBibber responded that he was in a relationship and that he and his partner had recently had a baby.

{¶ 26} After they exchanged a few more messages, J.H. asked, "So just curious, but what made you ask that question lol," apparently referring to the question about whether she was single. VanBibber told her, "[L]ol make our snap delete immediately and I'll tell ya." After J.H. informed him that she had changed the chat setting in the app to "delete immediately," VanBibber responded, "I want to fucking rail you. I want to fuck you as hard and fast as I can and I've wanted to since the moment I saw you." After they exchanged several more messages, VanBibber texted, "[L]ol I'm really just asking if you wanna fuck meeeeeeeeeee." J.H. replied, "Lmao aren't u always busy at court," to which VanBibber responded, "That's not what I asked." The conversation ended when J.H. responded with " 😂😂😂."

{¶ 27} J.H. told Miller about the Snapchat messages on April 10. Miller was very upset, but neither he nor J.H. believed that they could terminate VanBibber's services, because the hearing in Miller's case was just one week away. When J.H. confronted VanBibber about the messages a couple of days later, VanBibber stated that he was intoxicated during the conversation but that he meant what he had said. And on April 16, VanBibber represented Miller at his child-support hearing.

{¶ 28} VanBibber's Snapchat conversation with J.H. came to relator's attention in March 2025 in the course of an investigation of a separate grievance. On March 11, relator sent VanBibber a letter of inquiry, enclosing screenshots of the conversation, and requested a response by March 25. On March 13, VanBibber acknowledged receipt of the letter and requested a copy of "the report and/or any other related documents filed and/or provided to [relator's] office in regard to the [matter]" "to ensure that [he would be] able to respond completely to any and all accusations."

{¶ 29} Later that day, relator sent VanBibber an email informing him that there had been no grievance filed and that the office had opened its investigation as a "matter that came to [its] attention" within the meaning of Gov.Bar R. V(9)(C)(1) (authorizing the Office of Disciplinary Counsel to investigate "any matter filed with it or that comes to its attention"). Relator also stated in the email that J.H. had provided information about her contacts with VanBibber, including the screenshots that relator had sent with the letter of inquiry. In closing the email, relator reminded VanBibber that his response was due on or before March 25.

{¶ 30} VanBibber did not respond to the letter of inquiry, a follow-up request relator emailed him on March 30, or a second letter of inquiry regarding the Snapchat conversation that relator sent him on April 8.

{¶ 31} Relator later subpoenaed VanBibber for a second deposition and directed him to provide several documents, including his response to relator's letters of inquiry regarding VanBibber's Snapchat conversation with J.H. After learning that VanBibber was representing a client in a murder trial, relator withdrew the subpoena as to the deposition and rescheduled the deposition. VanBibber ultimately sat for the deposition and provided some of the requested documents, but he never responded to relator's letters of inquiry regarding the Snapchat conversation.

**{¶ 32}** The parties stipulated and the board found by clear and convincing evidence that VanBibber's Snapchat conversation with J.H. and his failures to respond during relator's investigation of the conversation violated Prof.Cond.R. 8.1(b) and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). As this court explained in *Disciplinary Counsel v. Bricker*, "[i]n order to find a violation of Prof.Cond.R. 8.4(h), there must be clear and convincing evidence that the lawyer has engaged in misconduct that adversely reflects on the lawyer's fitness to practice law, even though that conduct is not specifically prohibited by the rules, or there must be proof that the conduct giving rise to a specific rule violation is so egregious as to warrant an additional finding that it adversely reflects on the lawyer's fitness to practice law." 2013-Ohio-3998, ¶ 21.

**{¶ 33}** Here, the board found that VanBibber's soliciting his client's significant other for sexual activity—although not expressly prohibited by the Rules of Professional Conduct—nonetheless adversely reflects on VanBibber's fitness to practice law. We have previously found that an attorney violated Prof.Cond.R. 8.4(h) by initiating a sexual act with the mother of a client's child after summoning her to his office, ostensibly to discuss the client's case. *See Disciplinary Counsel v. Carter*, 2023-Ohio-3992, ¶ 9-12, 28. We have also found that an attorney violated a corresponding disciplinary rule of the former Code of Professional Responsibility by engaging in a sexual relationship with the spouse of a client who was being tried on capital charges. *See Disciplinary Counsel v. Owen*, 2014-Ohio-4597, ¶ 2, 7, 12. On these facts and this authority, we adopt the board's findings that VanBibber's Snapchat conversation with J.H. and his failures to respond during relator's investigation of the conversation violated Prof.Cond.R. 8.1(b) and 8.4(h).

**SANCTION**

{¶ 34} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 35} The parties stipulated that four aggravating factors are present in this case: VanBibber's prior discipline, multiple offenses, lack of cooperation in the disciplinary process, and submission of false evidence or statements during the disciplinary process. *See* Gov.Bar R. V(13)(B)(1) and (4) through (6).

{¶ 36} In addition to those factors, the board found that VanBibber had acted with a dishonest or selfish motive by engaging in misconduct for personal advantage—namely, taking on cases with scheduling conflicts for financial gain, submitting false information and failing to cooperate with relator in an effort to protect his interests, and soliciting a client's significant other for sexual activity for his own personal gratification. *See* Gov.Bar R. V(13)(B)(2). The board also found that VanBibber had harmed vulnerable victims in two respects. *See* Gov.Bar R. V(13)(B)(8). First, he failed to inform Casto that a settlement conference had been scheduled in his case, resulting in Casto's failure to appear for that conference and his being ordered to pay legal fees—though VanBibber ultimately paid those fees on Casto's behalf. And second, VanBibber caused Casto's ex-wife to waste time and money by twice traveling from Florida to attend hearings that were continued due to VanBibber's failure to appear.

{¶ 37} Much of the misconduct at issue in this case occurred during the pendency of VanBibber's prior disciplinary case—which arose in part from his providing false information to law-enforcement officers in two counties. *See* *VanBibber*, 2024-Ohio-1702, at ¶ 12, 14. Although VanBibber was not charged with violations of Prof.Cond.R. 8.1(a) or (b) for that misconduct as he was here, we nonetheless found in that case that his failure to cooperate in the disciplinary

process and his submission of false statements during the disciplinary process constituted aggravating factors. *See id.* at ¶ 25-26, 37. Moreover, VanBibber's failure to cooperate in the disciplinary investigation giving rise to this proceeding continued even after we imposed a conditionally stayed two-year suspension for his prior misconduct and ordered him to serve a two-year term of monitored probation. *See id*. at ¶ 58.

{¶ 38} Although the parties did not stipulate to any mitigating factors in this case, the board found that VanBibber had exhibited a cooperative attitude at his disciplinary hearing. *See* Gov.Bar R. V(13)(C)(4). The board also found that other penalties or sanctions had been imposed on VanBibber for his misconduct in that he eventually paid the attorney fees occasioned by his failure to attend the *Casto* settlement conference. *See* Gov.Bar R. V(13)(C)(6). And while recognizing that it is not a mitigating factor, the board acknowledged VanBibber's history of substance abuse—as evidenced by the multiple alcohol- or drug-related offenses that gave rise to his first disciplinary case—and commended him for having achieved sobriety by the time of the hearing.

{¶ 39} At the conclusion of the disciplinary hearing, the panel chair informed the parties of their opportunity to file posthearing briefs. In his brief, relator recommended that VanBibber be suspended from the practice of law for two years with no stay. VanBibber did not file a posthearing brief, nor had he proposed at the hearing an appropriate sanction for his misconduct.

{¶ 40} The board began its consideration of the appropriate sanction by noting the proposition that "an actual suspension from the practice of law is the general sanction when an attorney engages in dishonest conduct," *Medina Cty. Bar Assn. v. Cameron*, 2011-Ohio-5200, ¶ 17. Indeed, we have held, "When an attorney engages in a course of conduct that violates [an ethical rule prohibiting dishonesty, fraud, deceit, or misrepresentation], the attorney will be actually suspended from the practice of law for an appropriate period of time." *Disciplinary Counsel v.*

*Fowerbaugh*, 1995-Ohio-261, syllabus. Although not mentioned by the board, a second principle is also relevant here: "[W]e have consistently held that neglect of client matters coupled with the failure to cooperate in the ensuing disciplinary investigation warrants an indefinite suspension from the practice of law." *Disciplinary Counsel v. Ford*, 2012-Ohio-3915, ¶ 24.

{¶ 41} We have also recognized, however, that "each disciplinary case is unique, and Gov.Bar R. V(13)(A) directs that the board consider 'all relevant factors' in determining what sanction to recommend." *Disciplinary Counsel v. Daniell*, 2023-Ohio-3383, ¶ 22, quoting the rule. Accordingly, when we have found a deviation to be warranted, we have declined to impose the presumptive sanction of an indefinite suspension for the neglect of client matters coupled with a failure to cooperate in the resulting disciplinary investigation. *Id.* For example, in *Cuyahoga Cty. Bar Assn. v. Paulson*, we imposed the lesser sanction of a two-year suspension when the attorney had neglected just one client's legal matter. 2006-Ohio-5859, ¶ 12. Similarly, we have imposed a lesser sanction when the attorney's misconduct, while serious, did not cause irreparable harm to any clients. *See Disciplinary Counsel v. Hallquist*, 2011-Ohio-1819, ¶ 15 (imposing a two-year suspension, with six months conditionally stayed, on an attorney who neglected two client matters and failed to cooperate in the resulting disciplinary investigation).

{¶ 42} We have also found an attorney's eventual cooperation in the disciplinary process to be a factor that can justify the imposition of a sanction less severe than the indefinite suspension that is presumptively appropriate in cases involving the neglect of client matters coupled with a failure to cooperate in the resulting disciplinary investigation. *See, e.g.*, *Daniell* at ¶ 21-22, 34 (imposing a two-year suspension, with 18 months conditionally stayed, on an attorney who neglected a single client's legal mater, failed to reasonably communicate with the client, failed to properly manage his client trust account, and failed to cooperate in

the ensuing disciplinary investigation until after the complaint was certified); *Disciplinary Counsel v. Boulger*, 2000-Ohio-347, ¶ 2-3, 7 (imposing a conditionally stayed six-month suspension on an attorney who neglected a personal-injury matter, dismissed the case without informing his client, and failed to respond to the relator's letters of inquiry regarding grievances filed by four clients).

{¶ 43} Here, VanBibber neglected just one client's legal matter and eventually cooperated in this disciplinary proceeding by entering into comprehensive stipulations of fact and misconduct and accepting responsibility for his misconduct when testifying at his disciplinary hearing. Those facts are sufficient to warrant a deviation from the presumptive sanction of an indefinite suspension.

{¶ 44} The board recommends that we suspend VanBibber from the practice of law for two years with no stay and that we require him to pay the costs of these disciplinary proceedings. In support of its recommendation, the board relies primarily on three cases in which we imposed sanctions ranging from a six-month suspension to a two-year suspension with 18 months conditionally stayed on attorneys who, like VanBibber, made false statements to a tribunal: *Disciplinary Counsel v. Rohrer*, 2009-Ohio-5930, *Toledo Bar Assn. v. DeMarco*, 2015-Ohio-4549, and *Disciplinary Counsel v. Walden*, 2019-Ohio-5287.

{¶ 45} In *Rohrer*, the attorney directed a staff member to deliver a copy of a motion filed in a client's case to a local newspaper, in violation of a verbal order of the trial court prohibiting counsel from discussing the case with the media. *Rohrer* at ¶ 8-10. During a subsequent hearing on the motion, Rohrer falsely told the court that his staff had misconstrued his instructions and had leaked the information to the media. *Id*. at ¶ 12-16. After firing his assistant for purportedly divulging confidential information, Rohrer wrote a misleading letter to the

unemployment-compensation bureau, again suggesting that his assistant had been responsible for the leak. *Id*. at ¶ 19, 22.

{¶ 46} We found that Rohrer's deliberate disobedience of a court order and his false statements to the judge and the unemployment-compensation bureau violated three of the six ethics rules at issue in this case: Prof.Cond.R. 3.3(a)(1), 8.4(d), and 8.4(h). *See id.* at ¶ 3, 34. But we also found that Rohrer's conduct violated Prof.Cond.R. 3.4(c) (prohibiting a lawyer from knowingly disobeying an obligation under the rules of a tribunal) and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). *Id*. at ¶ 3, 34. As aggravating factors, we found that like VanBibber, Rohrer had committed multiple offenses and exhibited a selfish motive. *See id.* at ¶ 34, 36, 38. Though Rohrer also failed to show remorse for his conduct, *id*. at ¶ 40, there was no finding of a failure to cooperate in the disciplinary investigation, as there was in this case. We found four mitigating factors: a clean disciplinary record, a cooperative attitude toward the disciplinary proceedings, the imposition of other sanctions for the misconduct, and the submission of evidence of good character and reputation, *id.* at ¶ 32—the second and third of which are also present in this case. We suspended Rohrer from the practice of law for six months. *Id*. at ¶ 54.

{¶ 47} In *DeMarco*, the attorney repeatedly represented to the court that he had never received certain discovery materials when, in fact, he had possession of the materials at one time. 2015-Ohio-4549, ¶ 3-6. During a court proceeding, a witness truthfully testified that he had given the materials to DeMarco and DeMarco responded by threatening to take the witness "outside." *Id*. at ¶ 5-6, 14. We found that DeMarco's conduct violated one of the six ethics rules at issue in this case—Prof.Cond.R. 3.3(a)(1)—and also Prof.Cond.R. 3.3(a)(3) (prohibiting a lawyer from offering evidence that the lawyer knows to be false) and 8.4(c). *Id*. at ¶ 7.

**{¶ 48}** Just one aggravating factor was present in *DeMarco*: a dishonest motive. *Id*. at ¶ 9. As for mitigation, we found that DeMarco had exhibited a cooperative attitude toward the disciplinary proceedings and—in contrast to VanBibber—that DeMarco had no prior discipline and had presented evidence of his good character and reputation. *See id*. Recognizing that an actual suspension is especially appropriate when an attorney has made repeated and material false statements to a court, we suspended DeMarco for one year with six months conditionally stayed. *Id*. at ¶ 12, 15-16.

**{¶ 49}** And in *Walden*, 2019-Ohio-5287, the attorney neglected three client matters, failed to comply with court orders in one case and made false statements to the court in another, and failed to cooperate in the resulting disciplinary investigations. *Id*. at ¶ 6-10. We found that Walden's conduct violated four of the six rules at issue in this case—Prof.Cond.R. 1.3, 3.3(a)(1), 8.1(b), and 8.4(d)—and that his lack of communication with his clients violated two additional rules. *See id*. at ¶ 11-12.

**{¶ 50}** In *Walden*, we found the existence of three aggravating factors that are present in this case: a history of prior discipline, multiple offenses, and a failure to cooperate in the disciplinary process. *See id.* at ¶ 1, 15 (noting that Walden's previous sanction consisted of a one-day suspension for failing to timely register as an attorney). Although Walden had also engaged in a pattern of misconduct, we did not find that he had caused harm to vulnerable victims, *id.* at ¶ 15, as VanBibber did here. As for mitigating factors, we found in *Walden* the absence of a dishonest or selfish motive, full cooperation in the disciplinary proceeding *after* relator filed a notice of intent to file a formal complaint, and the submission of evidence of good character and reputation in the community, *see id*.; in contrast, VanBibber's selfish motive was an aggravating factor in this case. We suspended Walden from the practice of law for two years with 18 months stayed on the condition that he commit

no further misconduct, and we placed additional conditions on his reinstatement related to his mental health. *Id*. at ¶ 16, 22.

{¶ 51} In addition to the false statements to a tribunal that were at issue in *Rohrer*, *DeMarco*, and *Walden*, VanBibber violated Prof.Cond.R. 8.4(h) by making inappropriate sexual advances toward a client's significant other. Therefore, the board also considered *Disciplinary Counsel v. Bunstine*, 2013-Ohio-3681. During a meeting held in his office less than a week before the hearing in a client's child-custody matter, Bunstine solicited *the client* for sexual activity in lieu of payment for his legal services, suggesting that she "get rid of her fiancé, find a babysitter for her two children, and answer her door naked." *Id*. at ¶ 10. Soon after the meeting, Bunstine drove 35 minutes to the client's home, but he left after he was confronted by her fiancé and her fiancé's father. *Id*. at ¶ 11-12. There is no evidence in this case that VanBibber took any similar action in furtherance of the sexual advances toward J.H. that he electronically communicated.

{¶ 52} We found that Bunstine violated Prof.Cond.R. 8.4(h)—as VanBibber did—but also Prof.Cond.R. 1.8(j) (prohibiting a lawyer from soliciting or engaging in sexual activity with a client unless a consensual sexual relationship existed when the client-lawyer relationship commenced). *See id*. at ¶ 25. No mitigating factors were present in *Bunstine*, *id.* at ¶ 29—compared to the two mitigating factors present here. And just three of the six aggravating factors present in this case were present in *Bunstine*: prior discipline, a selfish motive, and harm caused to a vulnerable client. *See id*. at ¶ 28. After considering the sanctions we had imposed on other attorneys who made sexual advances toward or engaged in a sexual relationship with a client, we suspended Bunstine from the practice of law for one year with six months conditionally stayed. *Id*. at ¶ 32-34.

{¶ 53} In contrast to Bunstine's sexual advances, VanBibber's were directed not at a client but at a client's significant other. As noted above, we have twice disciplined attorneys who engaged in inappropriate sexual conduct with the

18

significant other or spouse of a client. In *Carter*, we imposed a two-year suspension, with one year conditionally stayed, on an attorney who lured a client's child's mother to the attorney's office under the false pretense of discussing the client's case and then coerced the mother into engaging in a sexual act to "reward" the attorney for representing the client. 2023-Ohio-3992 at ¶ 42. And in *Owen*, we imposed the same sanction on an attorney who engaged in a sexual relationship with the spouse of a client charged with aggravated murder with death-penalty specifications and other criminal offenses. 2014-Ohio-4597 at ¶ 35. We find, however, that VanBibber's misconduct toward his client's significant other did not rise to the level of the misconduct at issue in *Carter* or *Owen*, because VanBibber's misconduct was limited to electronically communicated sexual advances and did not include any inappropriate physical contact.

{¶ 54} In the cases discussed above, we imposed term suspensions ranging from six months with no stay in *Rohrer*, to one year with six months stayed in *DeMarco* and *Bunstine*, to two years with 18 months stayed in *Walden*, to two years with one year stayed in *Carter* and *Owen*. But the combination of VanBibber's multiple violations—which include the neglect of a client's legal matter, making false statements to a tribunal *and* to relator, and inappropriate sexual advances toward his client's significant other—exceeds the misconduct at issue in each of those cases. VanBibber's misconduct is made worse by the facts that nearly all of it occurred while his prior disciplinary case was pending and that his failure to cooperate with relator continued even after we imposed a conditionally stayed two-year suspension in that case.

{¶ 55} On these facts, we conclude that the actual two-year suspension recommended by the board is the appropriate sanction for VanBibber's misconduct in this case.

## CONCLUSION

{¶ 56} Accordingly, Jack Herchel VanBibber is hereby suspended from the practice of law in Ohio for two years.  Costs are taxed to VanBibber.

Judgment accordingly.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Karen H. Osmond, Assistant Disciplinary Counsel, and Susan M. Hard, for relator.

Jack H. VanBibber, pro se.

_____